FOLLETT v. SHELDON, TREASURER.

SHATENBERGER v. SHELDON, TREASURER.

[Nos. 24,078, 24,079. Filed October 10, 1924. Rehearing denied December 19, 1924.]·

1. SCHOOLS AND SCHOOL DISTRICTS.—*School Township and Civil Township.—Statute.*—Under the provisions of §6404 Burns 1914, a school township and the corresponding civil township, although they are coterminous and governed by the same officers, are separate and distinct corporations, as much so as if located in separate territory, and governed by separate officers. p. 526.

2. SCHOOLS AND SCHOOL DISTRICTS.—*Plan of Government.*—The legislative plan of government for the common schools is a state plan, and the local units of government are merely the agents of the state in carrying out that plan, and it is for the legislature to determine through what agents or agencies the power shall be carried out and how the burden shall be divided between local governmental units. p. 527.

3. SCHOOLS AND SCHOOL DISTRICTS.—*Legislature May Change Plan of School System.*—The power to provide for public schools being a legislative one, it is not exhausted by exercise, but the legislature may change the plan as often as it deems it necessary or expedient, being answerable for mistakes only to the people and not to the courts. p. 528.

4. MUNICIPAL CORPORATIONS.—*Debt Limitation.—Borrowing Capacity.*—It is now well settled in this state that where two or more municipal corporations cover all or a part of the same territory, the debts of all are not to be aggregated or considered in determining the borrowing capacity of any one. p. 528.

5. SCHOOLS AND SCHOOL DISTRICTS.—*Civil and School Townships.—Issue of Bonds by Each.*—The legislature may authorize either the civil or school township covering the same territory to issue bonds to build a school house, and authorize the civil township to pay a part and the school township a part, each being liable only for its specified part of the debt. p. 529.

6. SCHOOLS AND SCHOOL DISTRICTS.—*Evading Constitutional Debt Limitation.—Statute.*—The fact that a law authorizing both a civil township and a school township covering the same territory to issue bonds for the purpose of building a school house, such as the law of 1917 (Acts 1917 p. 684) as amended Acts 1919 p. 94, §§6616f-6616l Burns' Supp. 1921, would permit the legislature to evade the constitutional debt limitation

Follett v. Sheldon, Treas.—195 Ind. 510.

on municipal corporations, does not affect the validity of such law, the legislature being supreme in the legislative field except as expressly prohibited by the Constitution.   p. 529.

7. SCHOOLS AND SCHOOL DISTRICTS.—*Authority of Township Advisory Board.—Cannot be Controlled by Courts.—Statute.*— The act of 1917 (Acts 1917 p. 684), as amended by Acts 1919 p. 94, §§6616f-6616l Burns' Supp. 1921, authorizing both the civil township and the school township covering the same territory to issue bonds for the construction of a new school house, clearly leaves to the township advisory board the question whether an emergency exists to which the statute is applicable, and the courts cannot decide that question (explaining *McCullom* v. *State, ex rel.,* 195 Ind. 217).   p. 530.

8. CONSTITUTIONAL LAW.—*Legislative Power.—Reasons for Enacting Law Immaterial.*—The reasons the legislature may have had for enacting a law are immaterial, and the courts cannot inquire into the reasons that prompted the legislature to pass a law.   p. 531.

9. SCHOOLS AND SCHOOL DISTRICTS.—*Bond Issue by Civil Township.*—The fact that the law provides for the use of school houses for other than school purposes, such as for public gatherings and for other civic and social purposes, would be sufficient reason for authorizing a civil township to join in the expense of constructing a school building, and issuing bonds for its part of the expense.   p. 531.

10. SCHOOLS AND SCHOOL DISTRICTS.—*Bond Issue by Civil Township.—Validity of Law.—Statute.*—The act of 1917 (Acts 1917 p. 684), as amended by Acts 1919 p. 94, §§6616f-6616l Burns' Supp. 1921, authorizing a civil township to bear part of the expense of constructing a school house and to borrow money and issue bonds therefor, when school township's borrowing capacity is insufficient for such purpose, is not in conflict with Article 13 of the Constitution limiting the indebtedness of a municipal corporation to two per cent. of the value of taxable property therein.   p. 531.

11. SCHOOLS AND SCHOOL DISTRICTS.—*Finding of Emergency by Township Advisory Board.—Statute.*—In a proceeding under the act of 1917 (Acts 1917 p. 684), as amended by Acts 1919 p. 94, §§6616f-6616l Burns' Supp. 1921, authorizing the civil township to borrow money and issue bonds therefor to aid the school township in the construction of a school house if an emergency is found to exist by the township advisory board, it is not necessary for such board to set out the facts creating the emergency.   p. 532.

12. SCHOOLS AND SCHOOL DISTRICTS.—*Township Advisory Board.—Resolution Authorizing Trustee to Issue Bonds.*—

*Statute.*—A resolution by a township advisory board authorizing the trustee to issue bonds of both the civil and school townships for the erection of a school building, under Acts 1917 p. 684, as amended by Acts 1919 p. 94, §§6616f-66161 Burns' Supp. 1921, *held* sufficient, though it did not expressly state that trustee was authorized to borrow money.   p. 532.

13.   TOWNSHIPS.—*Advisory Board.—Sufficiency of Record.*—The record of a township advisory board need not be couched in technical legal language, but is sufficient if it substantially complies with the provisions of the law creating such board. p. 532.

14.   SCHOOLS AND SCHOOL DISTRICTS.—*Abandonment of School by Town.—Transfer to Township.—Validity of Transfer.— Statute.*—The statute providing for the abandonment of schools by towns and the transfer of the property to the township (Acts 1919 p. 818, §§6479a-6479c Burns' Supp. 1921) does not require a written agreement between the town and the township trustee, but the statute fixes what the terms of the agreement shall be.   p. 534.

15.   SCHOOLS AND SCHOOL DISTRICTS.—*Abandonment of School by Town.—Transfer to Township.—Validity of Transfer.— Statute.*—On the abandonment of a school by a town and the transfer of the school property to the township under the provisions of Acts 1919 p. 818, §§6479a-6479c Burns' Supp. 1921, the statute requires that the town school trustees shall execute a deed conveying the buildings and real estate to the township, but, where the transfer has been completed, the township trustee has taken posession of the school property, with the consent of both the school trustees and the trustees of the civil town, and assumed the indebtedness of the school town, the title to the school property would be vested in the school township although the deed transferring the real estate was executed by the trustees of the civil town instead of the school town.   p. 534.

16.   SCHOOLS AND SCHOOL DISTRICTS.—*Town's Abandonment of School.—Transfer to Township.—Validity of Transfer.—Statute.*—On the abandonment of a school by a town and the transfer of the school property to the township under the provisions of Acts 1919 p. 818, §§6479a-6479c Burns' Supp. 1921, the fact that the town school trustees delivered to the township trustee the original record of the school town's indebtedness instead of a copy, as the statute provides, would not invalidate the transfer where all the facts as to the school town's obligations were available from the record.   p. 535.

17.   SCHOOLS AND SCHOOL DISTRICTS.—*Abandonment of School by Town.—School Town Ceases to Exist.*—On the abandon-

ment of a school by a town and the transfer of the school property to the township under the provisions of Acts 1919 p. 818, §§6479a-6479c Burns' Supp. 1921, the town school corporation ceases to exist, although the statute does not expressly so provide. p. 535.

18. SCHOOLS AND SCHOOL DISTRICTS.—*Abandonment of School by Town.—Territory Annexed to Township for School Purposes.—Statutes.*—On the abandonment of a school by a town and the transfer of the school property to the township under the provisions of Acts 1919 p. 818, §§6479a-6479c Burns' Supp. 1921, the territory formerly included in the school town becomes a part of the school township for all school purposes, and taxes should be levied on all the taxable property of the township, including the part within said town, to discharge bonds issued by the civil and school townships for the erection of a school building in said township under the provisions of Acts 1917 p. 684, as amended by Acts 1919 p. 94, §§6616f-6616l Burns' Supp. 1921. p. 536.

19. SCHOOLS AND SCHOOL DISTRICTS.—*Abandonment of School by Town.—Property Included in Taxable Property of Township.—Statute.*—In estimating the taxable property of a township so as to determine the limit of indebtedness of a civil and school township after the abandonment of a town school and the transfer of its property to the school township, under the provisions of Acts 1917 p. 684, as amended by Acts 1919 p. 94, §§6616f-6616l Burns' Supp. 1921, all the taxable property of the township, including the part within the town, should be considered. p. 536.

20. PARTIES.—*Defendants.—Necessary Parties.—Statute.*—The statute (§269 Burns 1914) requires all persons who are necessary parties to a complete determination of the questions involved to be made parties defendant. p. 539.

21. SCHOOLS AND SCHOOL DISTRICTS.—*Issue of Bonds for Construction of School Houses.—Validating Statute.*—The act of 1921 (Acts 1921 p. 820, §§5991b, 5991c Burns' Supp. 1921) legalizing all proceedings and acts under which bonds were sold or issued for certain enumerated purposes, but providing that it should not affect any pending litigation, was applicable to bonds issued under the provisions of Acts 1917 p. 684, as amended by Acts 1919 p. 94, §§6616f-6616l Burns' Supp. 1921, to provide means for erecting a school house as provided therein, although an action was pending to enjoin the levy and collection of taxes to pay them, but the civil and school townships to which the tax would belong were not, at the time the

law took effect, parties thereto, as no judgment could then have been rendered in that action that could have bound the townships which issued the bonds, and such a judgment could not have determined the validity of either the tax or the bonds. p. 539.

22. STATUTES.—*Curative Statutes.—Irregularities that May be Cured.*—The legislature cannot, by a subsequent statute, cure any constitutional defect or objection to bonds or other obligations issued by a municipal corporation or taxing district, but any omission, irregularity or act which it could have validated originally, it could cure by such a statute.  p. 539.

23. SCHOOLS AND SCHOOL DISTRICTS.—*Bonds Issued to Build School Houses.—Curative Statute.*—The legislature cannot, by a subsequent act, cure any constitutional defect or objection to bonds issued to build a school house, but any omission, irregularity or act which the legislature could have validated originally, it could cure by a subsequent legalizing act, where there was no constitutional objection and vested rights have not intervened.  p. 539.

24. APPEAL.—*Special Finding.—Failure to Find Fact Agreed to.—When not Reversible Error.*—A judgment will not be reversed for failure to find a fact agreed to, favorable to the judgment defendant, where the decision on a new trial could not be different, as the fact having been admitted, it could not be controverted on a subsequent trial.  p. 540.

25. APPEAL.—*Harmless Error.—Right Result Reached.—Reversal not Justified.*—When it is apparent from the record that a right result has been reached and that a new trial would necessarily result in a similar decision, the court is not justified in reversing the judgment.  p. 540.

From Dekalb Circuit Court; *Dan M. Link,* Judge.

Separate suits by Elmer Follett and Charles L. Shatenberger against Fred W. Sheldon, County Treasurer and others.  From a judgment for defendants, the two plaintiffs appeal.  *Affirmed.*

*Arthur L. Gilliom,* for appellants.

*Best & Yotter, C. C. Carlin, Maurice McClew* and *Leonard, Rose & Zollars,* for appellees.

GAUSE, J.—Most of the questions involved in each of the above cases are identical, calling in question the validity of the same township bonds, and as the two cases

were combined for the purposes of oral argument, they may be covered by one opinion.

The action in cause No. 24,078 was brought by appellant Elmer Follett on behalf of himself and fifty-eight other named residents and taxpayers of the incorporated town of Fremont, in Fremont township, Steuben county, to enjoin the county treasurer from collecting taxes levied to pay certain bonds issued by both the civil township and school township of Fremont for the purpose of erecting a school house in the town of Fremont, and asking that the township officers be enjoined from making any future levies for such purpose.

The action in cause No. 24,079 was brought by the appellant Charles L. Shatenberger for himself and forty-nine other property owners in the township of Fremont, asking the same relief as in the first named cause.

The court made a special finding of facts in each case and stated as its conclusions thereon that appellants were not entitled to recover, and that appellees should recover their costs.

The special findings in both cases are identical and the following is a condensed statement of the facts as found:

That within the township of Fremont, in Steuben county, there is and has been for many years a civil town known as the town of Fremont; that for many years, until January 26, 1920, there was within said town a school corporation known as the school town of Fremont, the boundaries of which were coterminous with the civil town; that the board of trustees of said civil town, during all of said time, consisted of three members, and the board of school trustees of said school town, during all of said time, likewise consisted of three members; that on said January 26, 1920, and for a long time prior thereto, the board of school trustees of said

school town were C. W. Dally, who was the president of said board, and Ralph G. McIlhenie, who was the secretary thereof; that some time prior to January 26, 1920, Josiah P. Albright was the third member of said board, but that, prior to said date, he had removed from said town and vacated his office, and his successor never was elected; that on said date and for a long time prior thereto, the defendant James O. Worthington was, and still is, the trustee of said Fremont township, and George Griffith, R. L. Wade and B. F. Chapin were, and still are, members of the advisory board of said township; that, in the year 1912, a joint high school was established by said school town and said school township for the accommodation of high school students of said two corporations, and said corporations constructed within the corporate limits of said town a joint high school building, which was maintained as a joint high school until January 26, 1920; a part of the real estate upon which said building was erected was owned by said school township and part by said school town; that on January 26, 1920, said school town was indebted in the sum of $2,570.70, which was represented by outstanding bonds and interest thereon, which had been issued to aid in the construction of said joint high school, and that said school town had no other indebtedness on said date except such as might thereafter become due to teachers employed in said joint high school; that during the whole of the year 1920, the population of the town of Fremont, as shown by the last preceding census, was less than 2,000; that on January 22, 1920, at a meeting of the board of trustees of said town duly had and held, the following resolution was unanimously passed by said board:

"Whereas it is understood and agreed by and between the town board of trustees of the town of Fremont and James O. Worthington, Trustee of Fremont

township, now therefore be it resolved by the board of trustees of the town of Fremont, Indiana, that said town of Fremont abandon and discontinue its management and control of the public schools within said incorporated town and abolish the board of school trustees therein, upon agreement with the township trustee of Fremont township, in which said township said school is located, to take over the school property of said town as provided by law in the Acts of 1919, p. 818."

That the board of school trustees of said school town and said Worthington, trustee of said school township, attended said meeting of said board of trustees when said resolution was adopted, and it was adopted with the consent and approval of all the members of said board of school trustees, and that, at said meeting, said Worthington, as said trustee of said school township, agreed to take over said schools within said school town and thereafter to conduct the same as schools of said school township, and to assume and pay all school indebtedness against said school town; that said agreement was not reduced to writing at that time; that at said meeting, and by the passage of said resolution and in the making of said agreement between the board of trustees of said town and board of trustees of said school town and the said Worthington, trustee of said school township, said town and said school town abandoned and discontinued its management and control of said public school within said incorporated town.

That on January 26, 1920, the board of trustees of said town of Fremont again met in a meeting duly had and held, which meeting was attended by the board of trustees of the school town of Fremont and also by James O. Worthington as trustee of said school township of Fremont. Said board of trustees of said school town duly held a meeting of said board at the same time and place as the meeting held by said board of trustees

of said civil town. Said meeting was likewise attended by H. Lyle Shank, county superintendent of schools of said Steuben county, Indiana, and by Irwin W. Pence, auditor of Steuben county, Indiana, and Ed George, county assessor of Steuben county, Indiana. That thereupon, said county superintendent, county auditor and county assessor filed a written appraisement and valuation of the school buildings, property and equipment of said school town, fixing the valuation thereof at the sum of two thousand five hundred seventy dollars and seventy cents ($2,570.70), which said written appraisement and valuation was duly filed with said board of trustees of said civil town and the board of trustees of said school town; and thereupon the board of trustees of said school town delivered manual possession of all the property of said school town, consisting of its real estate, school buildings and equipment to the said James O. Worthington, as trustee of said Fremont school township, and *the board of trustees of said civil town* executed and delivered to the said Fremont school township a deed of conveyance of all the real estate owned by said school town, and, in consideration of the execution of said deed of conveyance and transfer of all of said school property to said Fremont school township by the board of trustees of said town of Fremont and the board of trustees of said school town of Fremont, the said James O. Worthington, as trustee of Fremont school township, for and on behalf of said township assumed and agreed to pay all of the indebtedness of said school town of every kind and nature whatsoever.

At said time, the trustees of said school town of Fremont delivered to said Worthington, as trustee of said Fremont township, all of their books and records, amongst said records being their minute book, upon page "two" whereof was set out a detailed statement

and record of all indebtedness of said school town, said statement setting forth the date of all bonds outstanding and all other evidence of indebtedness outstanding against said school town which was assumed by said school township, the denominations thereof, the rate of interest they bore, when the same became due, where payable and when and where the interest thereon was payable; that thereupon said school township accepted all of said school property and records and assumed and ever since has held the sole and exclusive possession of all of said school property, including said real estate, school buildings, equipment and said records, for the uses and purposes of said school township.

That on said date, the board of trustees of said school town had certain school revenues on hands, which were turned over to the said trustee of said school township; that immediately upon said execution of said conveyance by the board of trustees of said town of Fremont and the transfer of said school property by the trustees of said town by the board of trustees of said school town, said Worthington, being trustee of said school township, assumed control over all the schools conducted within the corporate limits of the town of Fremont, and has ever since conducted said schools as part of the schools of said school township, including said high school, and that, since that time, neither said civil town nor school town has exercised any control or jurisdiction over said schools or school property; that on said date, one of the school districts in said school township was known as District No. 4, and there was a public school house in said district during the school year of 1920 and until the destruction of said school house, as afterwards found, there was conducted in said school house a school for said district which was attended by twenty-five pupils or more of school age in said township; that on March 25, 1920, said school

house was totally destroyed by a wind storm; that for the year 1920, the aggregate assessed valuation of property within the town of Fremont was $952,855; the aggregate assessed valuation of said Fremont township outside of said town of Fremont was $1,325,570, making aggregate assessed valuation of property for said year within said town and township $2,278,425.

That after the destruction of said school house in said district number four as hereinbefore found, to wit: On April 23, 1920, at a special meeting of the advisory board of said Fremont township, duly called and held, attended by the trustee of said township and all members of said advisory board, said board found that an emergency and an indispensable necessity existed for constructing a new school building for said school township within the corporate limits of said town of Fremont, and for the borrowing of money, by and the issuance of bonds of the school township of Fremont and the civil township of Fremont for the purpose of erecting the same, and thereupon duly authorized the trustee of said township to issue the bonds of said school township in the sum of $38,115, and the bonds of the civil township in the sum of $40,000 with which to provide funds for the erection of said school house. The proceedings of said advisory board were duly entered of record and signed by the members of said advisory board and the trustee of said township before the adjournment of said meeting.

That, at said meeting, it was determined by said advisory board and the trustee of said township to erect said school house, and that the indebtedness necessarily incurred in the construction of same would exceed the indebtedness which said school township of Fremont could legally incur; and thereupon it was determined to issue bonds against both the said school township and said civil township as hereinbefore set out.

That after the meeting of said advisory board was so held on April 23, 1920, said James O. Worthington, as trustee of Fremont school township, duly filed his petition with the State Board of Tax Commissioners for the approval of the issuance of said bonds; that the hearing upon said petition was duly advertised as required by law and thereafter, to wit: On June 7, 1920, said matter came on to be heard by said State Board of Tax Commissioners, and the board granted the prayer of said petition and duly authorized the issuance of said bonds so provided to be issued in the resolution adopted by said advisory board, as hereinbefore set out; that the judgment and order of said State Board of Tax Commissioners was duly given and rendered.

That thereafter, to wit: On July 7, 1920, at a meeting of the advisory board of said Fremont township, duly had and held, and attended by all the members of said board and the trustee of said township, the bonds of said Fremont school town and of Fremont township, so authorized to be issued at the meeting of the advisory board held on April 23, 1920, as hereinbefore found, were duly issued and sold to W. H. Winship for the par value thereof and all accrued interest thereon, the bonds of said Fremont school township calling for the aggregate principal sum of $38,000 in denominations of $500 each, and the bonds of said Fremont civil township calling for the principal sum of $40,000 of varying denominations; all of said bonds bearing interest at the rate of six per cent.

That all of said bonds issued by said school township, or civil township, were executed by the trustee of said township and the members of the advisory board thereof, and the said advisory board attended at the time and place when and where said bonds were sold and concurred therein.

That the said Winship has, since his purchase of said

bonds, and prior to the commencement of this action, sold all of said bonds to other persons; and that, prior to the commencement of this action, neither the said Winship nor any other person to whom any of said bonds were sold had any knowledge or notice of any fact or anything in any manner tending to invalidate said bonds.

That immediately upon the purchase of said bonds by the said Winship, the said Winship paid to said James O. Worthington, as trustee of said school township and as trustee of said Fremont township, the full face value of all of said bonds and the accrued interest due thereon to the date of said purchase.

That said James O. Worthington, as trustee of said Fremont school township, shortly after the meeting of said advisory board held on April 23, 1920, and the issuance and sale of said bonds as hereinbefore found, contracted for and began the erection of a new school building for said school township within the corporate limits of said town of Fremont, and, prior to the commencement of this suit, expended of the proceeds of said bonds about $60,000 in the erection of said building. That the proceedings of said Worthington, as trustee of said school township, in the erection of said school building, were duly had and taken.

That the plaintiff and each of the persons for whom he brings his suit named in the complaint herein had knowledge of the abandonment of said schools by the board of trustees of the town of Fremont and of the execution of the conveyance of the school property in said town by the board of trustees of said town to the school township of Fremont and of the transfer of the school property of said school town to said school township of Fremont as hereinbefore found, shortly after said respective transactions were had and taken, and that each of said persons had knowledge of the

fact that said James O. Worthington, as trustee of said school township, was conducting the schools within said school town as part of the schools of said school township, and that each of said persons had said knowledge during all of the time subsequent to January 26, 1920, and that each of said persons knew, on or about April 23, 1920, of the determination of said advisory board and the trustee of said school township to erect said new school building within the corporate limits of said town of Fremont as one of the public schools of said school township and to issue bonds of said school township and of said civil township to pay therefor, and that, at the time of the petition to the State Tax Board for authority to issue said bonds as hereinbefore found, each of said persons knew thereof and of the authorization of the issuance of said bonds by said State Tax Board, and that each of said persons knew at about the time said bonds were issued that the same were issued, and during all of the time said school building was being constructed and prior to the commencement of this suit, each of said persons knew that said building was being constructed and was being paid for by the proceeds of the sale of said bonds, but none of said persons made any objection or complaint with respect to any of such matters until shortly prior to the commencement of this suit.

That after the commencement of this action, to wit, on April 20, 1921, the board of trustees of said school town, by and through said C. W. Dally and Ralph G. McIlhenie, executed a deed of conveyance, conveying all of said school property formerly owned by said school town to said school township, and made out and delivered to said township trustee a record of all of the indebtedness of said school town that existed on January 26, 1920, all as required by the statute.

That when this action was begun and until May 9,

1921, the following defendants only were named in the complaint herein, to wit: · Fred W. Sheldon, treasurer of Steuben county, Indiana; Frank O. Watkins, auditor of Steuben county, Indiana; James O. Worthington, school trustee of Fremont township; George Griffith, member of the advisory board of Fremont township, B. F. Chapin, member of the advisory board of Fremont township, and R. L. Wade, member of the advisory board of Fremont township.

That this action was commenced on March 7, 1921, and on May 9, 1921, the plaintiff amended his complaint herein by inserting the names of Fremont school township, Steuben county, Indiana, and Fremont township, Steuben county, Indiana, and James O. Worthington, trustee of said Fremont township as party defendants thereto; said amendment having been made by writing said names in the original complaint without any formal order authorizing the same and without any refiling of said complaint, and thereupon, on May 9, 1921, said Fremont school township, Fremont township and James O. Worthington, trustee of Fremont township, appeared to said complaint without process having been served against them and the answer theretofore filed herein by the original defendants was amended by interlining the names of said new defendants therein both in the caption thereto and in the body thereof.

Substantially· all the facts, as found by the court, were contained in a stipulation of the parties as to the facts.

The appellees claim that the authority to issue the bonds in question is conferred by chapter 174 of the acts of 1917 (Acts 1917 p. 684), as amended by chapter 42 of the acts of 1919 (Acts 1919 p. 94, §§6616f-66161 Burns' Supp. 1921).

The appellants in each case insist that said act is un-

constitutional, because it conflicts with Art. 13 of the State Constitution.

Said constitutional provision prohibits any political or municipal corporation from becoming indebted to an amount, in the aggregate, exceeding two per centum of the value of the taxable property in such corporation.

The act in question provides, in substance, that whenever in any township, a school house has been destroyed by fire, lightning or windstorm and it is desired to erect a new school building or a new central school building to accommodate the pupils of such township and provide for their education in either the common or high school branches of study, and when the borrowing capacity of the school township is not sufficient to permit the raising of the money necessary to construct such building, the trustee and advisory board may issue bonds not only of the school township, but also of the civil township, for the amount necessary, not exceeding two per cent. of the taxable property of each corporation.

The act also provides that the bonds of the school township shall be a debt of the school township, and the bonds of the civil township shall be the debt of the civil township, and each township shall be liable for its separate bonds.

The act provides that such advisory board may declare that an emergency exists for the borrowing of such money by each township and, in such an event, shall authorize the trustee to borrow a sum of money, to be named, sufficient to defray the expenses thereof, and authorize the issuing of bonds therefor.

Appellants take the position that such act violates said constitutional provision in that it permits a municipal corporation to do indirectly what it cannot do directly, and that it authorizes such a corporation to

incur an indebtedness in excess of two per cent. of its taxable property.

The question which would naturally first present itself is, that if it authorizes a corporation to become indebted more than the constitutional limit, which corporation does it authorize to become so indebted?

The school township can only become indebted to its two per cent. and is only liable for the bonds issued by it. The same is true of the civil township.

It has been settled by many decisions in this state that the school township and the civil township, although they may be coterminous as to territory
1. and are governed by the same officers, are separate and distinct municipal corporations, as much so as if located in separate territory and governed by separate officers. *Utica Township* v. *Miller* (1878), 62 Ind. 230; *Greensboro Township* v. *Cook* (1877), 58 Ind. 139; *Wilcoxon* v. *City of Bluffton* (1899), 153 Ind. 267; *Campbell* v. *City of Indianapolis* (1900), 155 Ind. 186; *Caldwell* v. *Bauer* (1912), 179 Ind. 146, 164.

Such corporations are not always coincident in territory. See *State, ex rel.,* v. *Board, etc.* (1923), 194 Ind. 350, 141 N. E. 456.

The statute providing for the division of counties into townships makes each township a separate corporate body (§9562 Burns 1914, §5990 R. S. 1881), and likewise the statute creating school townships makes each of them a separate corporate body, with a separate name and the usual corporate powers of contracting, suing and being sued, etc. (§6404 Burns 1914.) We then have two separate corporations, which must be viewed the same as if located in separate territory and governed by separate officers.

Article 8 of the State Constitution authorizes the legislature to provide for a system of common schools.

As has been held by this court, the public schools are a concern, not of the local units of government, but of the state generally. The state is the unit and 2. the legislature is the source of power. *State, ex rel.,* v. *Ogan* (1902), 159 Ind. 119; *State, ex rel.,* v. *Haworth* (1890), 122 Ind. 462, 7 L. R. A. 240. The power to provide for the system of public schools being lodged in the legislature, it is for that body to determine through what agents or agencies the power shall be carried out.

As said by Judge Elliott in the case last cited: "It is for the law-making power to determine whether the authority shall be exercised by a State board of education, or distributed to county, township, or city organizations throughout the State. With that determination, the judiciary can no more rightfully interfere, than can the Legislature with a degree or judgment pronounced by a judicial tribunal."

The legislature has seen fit to impose upon different local units of government certain obligations with respect to the maintenance of the schools, and divide the responsibility therefor. The counties pay the salaries of the county superintendents of schools (§6400 Burns 1914, Acts 1911 p. 156) and pay for the services of the attendance officers of both the school townships and school cities (§6674 Burns' Supp. 1921, Acts 1921 p. 337).

Formerly in this state, the law authorized only the civil city to issue bonds for the construction of school houses in such city, although there was therein a separate school city, and it was held that such bonds were a valid obligation of the civil city. *Wilcoxon* v. *City of Bluffton, supra.*

It has been the policy of the legislature to place the burden of maintaining our school system upon different

local governmental units, and it is within the province of the legislature to determine how that burden shall be divided.

As was said by Judge Elliott, in *State, ex rel.,* v. *Haworth, supra:* "As the power over schools is a legislative one, it is not exhausted by exercise. The Legislature having tried one plan is not precluded from trying another. It has a choice of methods, and may change its plans as often as it deems necessary or expedient; and for mistakes or abuses it is answerable to the people, but not to the courts."

3.

Appellants refer to the case of *Voss* v. *Waterloo Water Co.* (1904), 163 Ind. 69, 66 L. R. A. 95, 106 Am. St. 201, and similar cases, in which attempts had been made to create another corporation to assume the indebtedness that was in reality the debt of the city, but where the city or original municipality was, in fact, the 'real debtor, and the evident purpose of creating such additional corporation was to evade this provision of the Constitution.

But such cases cannot be in point here, for the reason that the two municipal corporations we are now considering were created and were recognized as separate and distinct entities long before the constitutional provision we are now considering was adopted in 1851.

It is well settled that where two or more municipal corporations cover all or a part of the same territory, the debts of all are not to be aggregated or considered in determining the borrowing capacity of any one. As was said by this court in *Campbell* v. *City of Indianapolis, supra,* "That the prohibition declared by the Constitution under its plain language was intended to apply singly to the indebtedness of each corporation, and not to the indebtedness in the aggregate of two or more corporations, notwithstanding the fact that they might exist and be included in the same

4.

territorial limits, in our opinion cannot be successfully controverted." See, also, McQuillin, Municipal Corporations §2214.

It must be conceded that the legislature could authorize either one of the corporations involved to issue bonds to build a school house; that it might authorize 5. the county to assume part, the township part and the town part, or provide for any one to pay all the expense. Then why cannot it authorize the civil township to pay part and the school township to pay part? They are just as separate and distinct as if separated as to territory, and each one is liable only for its own debts.

Appellants say that if the law in question is upheld, it will permit the legislature to abuse the taxing power and evade the constitutional restriction. But 6. the legislature is supreme, except when expressly prohibited by the Constitution, in the general legislative field, and the only remedy is either by amending the Constitution or the exercise of the electoral franchise.

The danger arising from this power of the legislature and the inapplicability of constitutional provisions like the one we are considering are discussed by Gray on Limitations of Taxing Power and Public Indebtedness. After announcing the rule that two or more municipal corporations which are wholly or partly coincident in territory are regarded as separate bodies for the purpose of determining the constitutional debt limit, the author says, in §§2148 and 2149: "The legislative power to create different tax districts or quasi-corporations for various purposes, including the same territory, may thus be used to avoid debt limits. The rule stated is doubtless the correct rule in principle. The courts could not change it without wholly denying

the legislative power in the creation of subordinate governmental agencies. Under it, however, it is possible for great abuses to be perpetuated and it would be well if these abuses should be everywhere guarded against by *express constitutional limitations,* making provision for cases where a large city and a county are nearly coincident in territory, and otherwise restricting the power of independent organizations, covering the same territory, to contract debts."

According to the above author, provisions looking to this possible evil have been incorporated in some constitutions, including New York and South Carolina. In New York, certain counties which altogether comprise city limits cannot contract debts; and in South Carolina, the Constitution limits the indebtedness of any given territory, including all subdivisions within the territory. However wise some such a limitation might be, the courts cannot supply the same.

Appellants cite the case of *McCullom* v. *State, ex rel.* (1924), *ante,* 217, 141 N. E. 625, as sustaining their contention. The decision in that case was

7. clearly right upon the facts therein involved. In that case, the civil township refused to aid in the construction of the school house in question and an action was brought to mandate the officers to extend such aid. The statute under consideration clearly leaves it to the advisory board to determine whether an emergency exists to issue bonds for a new school house, and, of course, the courts could not decide that question. Furthermore, the opinion in the case cited expressly states that it was not necessary to decide whether the civil township might be authorized to contribute toward the erection of a school building which is subject to use for many public purposes other than conducting public schools.

Although it is no function of the courts to inquire into

the reasons that prompted the legislature to pass the law in question, it may be suggested that the fact that provision is made by law for public school houses to be used for other uses than that of the schools, such as for public gatherings of citizens and for other civic and social purposes, as provided in §§6614, 6614b-6614e Burns 1914, §4510 R. S. 1881, Acts 1913 p. 947, would make such buildings of public benefit aside from their use for the schools.

In our opinion, the law in question is not open to the constitutional objection urged against it. Appellants also insist that the bonds in question are invalid because no emergency was found to exist by the advisory board for the borrowing of the money, as contemplated by the law in question, and that the advisory board, in its resolution, did not expressly authorize the trustee to borrow the money required. The resolution adopted by the advisory board was as follows: "Resolved by the Advisory Board of the township of Fremont that there is an emergency existing for the expenditure of an amount of money not included in existing estimates and levy and that it is indispensably necessary to provide for the construction of a school building in the town of Fremont, in said township, the cost of which building will be in excess of the sum available therefor out of any annual levy; therefore the trustee of said township is hereby authorized to issue township bonds in the sum of $78,000 to pay for such building, such bonds to run for a period of 15 years and bear interest at the rate of six per cent. per annum, payable semi-annually, and be sold for not less than the par value thereof, $38,115 of said bonds to be issued by the school township of Fremont and $40,000 of said bonds to be issued by the civil township of Fremont under the provisions of the Act of the General Assembly of Indiana, approved on the 3d day

of March, 1919, and found in the Acts of 1919 on page 94 thereof, the indebtedness, which the school township of Fremont can incur not being sufficient to enable said trustee to procure sufficient money for building said school house."

By this resolution, the advisory board finds that the emergency does exist and it is not necessary that the facts which create the emergency be set out therein. Although it does not state in so many words that the trustee is authorized to *borrow* the money, it does authorize him to issue the bonds of each township, which, in substance, is authority to borrow such money. It is not necessary that the record of the advisory board be couched in technical legal language, but if the proceedings substantially comply with the law they are sufficient. Although the resolution might have been drafted in a more complete form and have been more explicit, we think it contains the substance of all that the statute requires.

Appellants attack the validity of the proceedings by which it was sought to discontinue the school town of Fremont and transfer the property thereof to the school township, and say that the school town was never lawfully abandoned. That therefore the township has no jurisdiction to build a school house within said territory; also, that since the school town was never legally discontinued, it still exists, and that since the assessed value of the property of the township *outside of said school town* amounts to only $1,325,570, the bond issue for each township exceeds the two per cent. constitutional limit. They say, first, that the property of the school town was not lawfully transferred to the township, and, second, that, even if the statute relating to such proceedings was complied with, such fact does not abolish the school town, and, therefore, the trustee and advisory board have no jurisdiction over the same.

The statute which applies in this case is the Act of 1919 p. 818, §6479a Burns' Supp. 1921, and provides for a town abandoning and discontinuing its management of public schools, where the town has a school indebtedness. This statute provides that any such town which does not exceed 2,000 in population, "may, through its town board of trustees, abandon and discontinue its management and control of public schools within such incorporated town, and abolish the board of school trustees therein, upon an agreement with the township trustee of the township in which such town is located to take over the school property of such town, in terms as in this act provided."

Section two of said act (Acts 1919 p. 818, §6479b Burns' Supp. 1921) provides for the property of the school town to be appraised by the county superintendent, county auditor and county assessor at an amount not exceeding the indebtedness, and that the township shall assume such indebtedness; that the school trustees shall deliver to the trustee a record of such indebtedness, showing where the same is recorded, the amounts thereof and to whom due, and shall transfer the building and equipment to the trustee and execute a deed conveying all real estate of the school town to the township.

It appears from the special finding that the town board of trustees adopted a resolution for the abandonment of such schools under an agreement with the township trustee to take over the same. That instead of the school trustees executing a deed for the property, the board of trustees of the town executed the same. That the only record of the indebtedness delivered to the township trustee before the bringing of this suit was a record of said school board which contained a detailed record of all indebtedness of such corporation, showing all the facts regarding the same that the statute

requires.   It appears that the school board and the town board delivered possession of all the school property to said trustee, who took control of the same and has ever since had exclusive control thereof; that the town ceased its management of such school; that the trustee assumed the indebtedness of the school town; that the statute as to appraising the property was complied with.

The objections appellants have to these proceedings are, first, that there was no written agreement between the township trustee and the school town for the taking over of the schools; second, that the town board of trustees, instead of the school board, executed the deed for the real estate; and third, that a sufficient record of the indebtedness of the school town was not furnished the trustee.   There is nothing in the statute requiring a written agreement between the town and the trustee of the township.   In fact, the *statute* fixes what the terms of the agreement shall be, if the town decides to abandon its schools, and the trustee agrees to take them over.   The facts show that such an agreement not only was made, but was carried out, and the fact that there was no formal written agreement would not affect the validity of the transaction after its full execution.

Although the statute requires the school trustees to execute a deed conveying the buildings and real estate to the township, and instead the town board of trustees executed the same, the special finding shows that the school board delivered possession of all of said property to the trustee, who has since used the same for school purposes, and that the trustee assumed the indebtedness of the school town and has fully performed all the acts required of him by said statute to effect a transfer of said property.   Under these circumstances, when the board of trustees of the town and the township trustee agreed to an abandonment of the

schools by the town and the assumption of control by the trustee, and the trustee assumed the indebtedness of the school town and took possession of the school property with the consent of the school trustees and the trustees of the civil town, the title to the school property vested in the school township, whether a formal conveyance was executed or not, and the township trustee could have compelled the proper town officers to execute a deed therefor. *School Township of Allen* v. *School Town of Macy* (1887), 109 Ind. 559.

School property is held in trust for school purposes by the corporations designated by the legislature to hold the same, and it is within the power of the legislature, at any time, to change the trustee, and, in our opinion, when the officers of the two corporations had taken the steps set out in the finding, the trustee to hold this property had been changed, although the formal deed, which would only be evidence of title, had not been properly executed.

It appears from the finding that instead of making a copy of the record of the indebtedness of the school town and delivering the same to the township trustee, the school trustees of the town delivered the original record of such indebtedness to the township trustee, and that, from this record, all the facts were available regarding the obligations of the school town. This omission would not invalidate such transaction.

Appellants argue that, even if the proceedings relating to the abandonment of the schools by the town were valid, the statute does not provide for the school corporation itself to cease to exist, and that, in fact, such corporation is in existence, so that it cannot be considered as a part of the school township. We think a reading of the statute cited above, and which governs these proceedings, will show the weak-

ness of this contention. True, the statute does not expressly state that the corporation shall cease to exist, but it provides that the town may "abandon and discontinue its management and control of public schools within such incorporated town, and abolish the board of school trustees therein  *  *  *." After the action has been taken that the statute specifies, the school town no longer has any schools, it has no property, no debts, it has no trustees nor officers and no duties to perform. It would be a strange corporation that could survive all of these adversities. We think it was clearly the intention of the legislature, in such a case, to abolish the corporation.

The school corporation being abolished, the territory which was formerly included in that corporation became a part of the township of Fremont for school purposes, and the territory within the civil town of Fremont is a part of the civil township of Fremont for all purposes of taxation except where the interests of the citizens outside of the town are peculiar to them, and where the urban citizens would not be interested because of their location within the town. As said by Judge Cooley in his work on Taxation, p. 153, "The nature of the tax will determine the district"; so it has been held in this state that the question as to whether a tax levied by township officers shall be borne by the part of the township within a town as well as by that outside is determined by whether the tax is levied for the entire township, or whether it is only for purposes that concern the part of the township lying without the incorporated town. *Kerlin* v. *Reynolds* (1894), 142 Ind. 460; *Tilford, Auditor,* v. *Douglas* (1873), 41 Ind. 580. The people within the town of Fremont are as much concerned in, and benefited by, the schools maintained by Fremont township, since the abandonment of the town schools, as are the people out-

side of such town. Therefore, it was the duty of the trustee to levy a tax upon all the taxable property of said township, including the part within said town, to discharge the bonds in question, and, in estimating the taxable property of the township, the same rule applies.

It is shown by the stipulation of facts that, although the advisory board's resolution named $40,000 as the amount of bonds of the civil township to be issued, the State Tax Board authorized bonds in the sum of $42,000 to be issued by that corporation, and that $42,000 of bonds were issued and sold by said township.

It also appears that the bonds of both townships bear interest at the rate of six per cent., although the law in force when these bonds were issued only authorized five per cent. interest.

Appellants also contend that the notice of the application to the State Tax Board was insufficient, because it was headed "Public Notice," instead of being addressed "to The Taxpayers," of the corporations affected, and that said notice does not specify that both corporations have filed a petition to issue bonds, but only recites that the trustee of Fremont township has filed his application.

These last three objections of appellants will be treated together.

It appears from the record that the actions were begun on March 7, 1921, and that the only defendants named at that time were "Fred W. Sheldon, Treasurer of Steuben County, Indiana; Frank O. Watkins, Auditor of Steuben County, Indiana; James O. Worthington, school trustee of Fremont Township; George Griffith, member of the advisory board of Fremont Township; B. F. Chapin, member of the advisory board of Fremont Township, and R. L. Wade, member of the advisory board of Fremont Township"; that on May 9, 1921, the appellants, by leave of court, made Fremont

school township and Fremont civil township and James O. Worthington, trustee of Fremont civil township, parties defendant. Therefore, until this last named day, neither of the municipal corporations which issued the bonds in controversy was a party to either of the above actions.

On March 11, 1921, which was after the original actions were begun, but before either township was made a party, the legislature passed a curative act which would seem to cure the objections appellants make to such bonds on account of the amount being more than the resolution of the advisory board named, or on account of the rate of interest, or because of any defect in the notice of the application to the State Tax Board (Acts 1921 p. 820). This act provides that, "all bonds, notes and other written obligations heretofore issued by or in the name of any county, township, municipality, special assessment or taxing district, either for corporate or municipal purposes, or for the purpose of constructing public improvements and in anticipation of assessments or special taxes levied, or to be levied, on account thereof, where said bonds, notes or other written obligations have been sold and the moneys received from the sale thereof retained, * *. * are hereby legalized and declared valid; and all proceedings and acts under which said bonds, notes or other written obligations were sold or issued are hereby fully legalized and declared valid." This act had an emergency clause, so it became effective on March 11, 1921, but it contained a provision that it should not affect any pending litigation.

The question then arises as to whether, when this act became effective, there was any litigation pending that could determine the validity of said bonds.

Our statute requires every person who is a neces-

sary party to a complete determination or settlement of the question involved to be made a party defendant. §269 Burns 1914, §268 R. S. 1881. The taxes sought to be collected would become the property of the township for which collected, for the purpose of discharging obligations of the township. The bonds attacked in the actions are the obligations of the townships. In such a case, the corporation issuing the bonds and to which the tax, if collected, would belong is a necessary party to a suit attacking the validity of the tax and the bonds. *Bittinger* v. *Bell* (1879), 65 Ind. 445; *McCleary* v. *Babcock* (1907), 169 Ind. 228; *Knopf* v. *First Nat. Bank of Chicago* (1898), 173 Ill. 331, 50 N. E. 660; High, Injunctions (4th ed.) §§576, 577. No judgment that could have been rendered in the action that was pending when the curative statute was passed could have bound the township which issued the bonds, and such a judgment could not have determined the validity of either the tax or bonds. Our conclusion is that when the curative act was passed, there was no litigation pending which could have determined the matters covered by said statute, in relation to the bonds in question.

Of course, the legislature could not, by a subsequent act, cure any constitutional defect or objection to said bonds, but any omission, irregularity or act which the legislature could have validated originally, it could cure by such a statute. That is, the legislature can ratify by a subsequent act whatever it can authorize originally, where there is no constitutional objection and vested rights have not intervened. *Johnson* v. *Board, etc.* (1886), 107 Ind. 15; *Schneck* v. *City of Jeffersonville* (1898), 152 Ind. 204; *Board, etc.,* v. *Spangler* (1902), 159 Ind. 575.

The legislature could originally have authorized bonds

540    SUPREME COURT OF INDIANA,

to have been issued as these bonds were issued, and it was competent for the legislature to ratify and approve all such bonds. We, therefore, hold that, at the time this curative act was passed, there was no action pending in which the validity of the tax or bonds in question could be determined, and that, by such act, the defects pointed out by appellants were cured.

The complaint in each case alleged that a tax had been levied to pay a part of said bonds, and the parties agreed that such a tax had been levied. The special finding, in each case, is silent upon this question, and appellants insist that, for this reason, the decision is contrary to law, since the evidence clearly established this fact. But, since the fact is not disputed, it being admitted, and since the decision could not be different if this fact had been found, the cause will not be reversed for this error.

When it is apparent from the record that a right result has been reached and that a new trial would necessarily result in a similar decision, the court is not justified in reversing a case.

We find no reversible error in the record in either of the above named causes, and the judgment in each cause is affirmed.