## STATE EX REL. ANDERSON v. BRAND, TRUSTEE.

[No. 26,560. Filed January 14, 1937. Rehearing denied April 27, 1937. Supplemental opinion filed April 5, 1938. Rehearing denied July 7, 1938.]

*Plummer & Plummer,* for appellant.

*John F. Kelton,* and *Raymond Brooks,* for appellee.

*Paul R. Shafer, Thomas F. O'Hara, Wickens & Wickens,* and *Denver Harlan,* amicus curiae for appellant.

FANSLER, J.—By this action it is sought to mandate appellee to continue relatrix in the employ of the township as a school teacher under the Act of 1927 (Acts 1927, c. 97, p. 259), which provides that a person who has served for five or more successive years as a teacher, and shall thereafter enter into a contract for further service, shall become a permanent teacher. The act was amended in 1933 (Acts 1933, c. 116, p. 716, §28-4307, Burns' Ann. St. 1933, §6003 Baldwin's Ind. 1934), and made to apply to city and town school corporations only. Townships, to which the act originally applied, were omitted in the amendment, which had the effect of repealing the law

so far as townships, schools, and the teachers therein are concerned.

A demurrer to the complaint was sustained. The relatrix contends that this was error; that, having become a permanent teacher under the Teachers' Tenure Law before the amendment, she had a vested property right in her indefinite contract, which may not be impaired under the Constitution. The question is whether there is a vested right in a permanent teacher's contract; whether, under the tenure law, there is a grant which cannot lawfully be impaired by a repeal of the statute.

The establishment and maintenance of public schools is a governmental function, jurisdiction over which vests in the General Assembly, whose power, subject to constitutional limitation, is plenary and whose discretion is not reviewable. This legislative power is not exhausted by exercise, and schools may be continued or discontinued, and the school system changed, or one system substituted for another, as often as the Legislature may deem it necessary or advisable in the public interest. *Follett* v. *Sheldon, Treas.* (1924), 195 Ind. 510, 144 N. E. 867. In establishing schools and enacting laws for their regulation, and in licensing teachers and providing for their tenure, the General Assembly acts for the benefit of the public, and not for the benefit of the teachers. In a case in which it was contended that a provision of the statute, providing for the revocation of teachers' licenses by the county superintendent, was unconstitutional for the reason that there was a vested property right in the license, this court said:

"It must be remembered that the establishment and regulation of public schools rests primarily with the legislative department, and the constitutional provisions invoked by appellee were not designed to tram-

mel the State in the exercise of its general political powers, or to impose upon the courts the duty of interposing between the legislature and the citizen in matters of purely governmental concern. . ... A license has none of the elements of a contract, and does not confer an absolute right, but only a personal privilege to be exercised under existing restrictions and such as may thereafter be reasonably imposed. Statutes authorizing the issuance of such licenses are enacted to promote the good order and welfare of the State, and may ordinarily be repealed at the pleasure of the legislature. (Authorities.)

"In the case of *Doyle* v. *Continental Ins. Co.* (1876), 94 U. S. 535, 540, 24 L. Ed. 148, the Supreme Court of the United States, in speaking of licenses, said: 'The correlative power to revoke or recall a permission is a necessary consequence of the main power. A mere license by a state is always revocable.' " *Stone, Supt.* v. *Fritts* (1907), 169 Ind. 361, 364, 365, 82 N. E. 792, 794.

The tenure law does not purport to give a teacher a definite and permanent contract. The word "indefinite" is used in the statute itself. The contract is variable as to compensation, and the tenure is permanent only in the event that it is not necessary to reduce the number of teachers. In effect therefore it gives the tenure teacher preferential rights over the teachers who have not attained a tenure status. If the purpose of this statute had been the granting of special privileges to certain teachers for their own benefit, its constitutionality would be seriously in question. But its enactment can be justified upon the theory that its purpose is to promote good order and the welfare of the state and of the school system by preventing the removal of capable and experienced teachers at the political or personal whim of changing officeholders. A future General Assembly may favor a policy

of constant change of teachers. The courts are power-less to prevent such a change. Each succeeding Legislature is free and untrammeled in its right to change governmental policy. The revocation of a tenure teacher's license would, of course, carry with it the indefinite contract. The contract, like the license upon which it rests, is a privilege granted by grace of the sovereign for the purpose of promoting the good order and welfare of the state. The license is broader in its bearing than the contract. Without the license a tenure contract cannot exist. Since there is legislative power to revoke the license and thus destroy the contract, there must necessarily be power to do the lesser thing, and merely revoke the tenure contract without canceling the license. The tenure statute was only intended as a limitation upon the plenary power of local school officials to cancel contracts. *Ratcliff* v. *Dick Johnson School Twp.* (1933), 204 Ind. 525, 185 N. E. 143. It was not intended as, and cannot be, a limitation upon the power of future Legislatures to change the law respecting teachers and their tenures. These are matters of public policy, of purely governmental concern, in which the legislative power cannot be exhausted or consumed, or contracted away, so as to limit the discretion of future General Assemblies. The repeal of the statute, in so far as it affects townships and township schools, removes the restriction upon the power of the school corporation so far as it affects the preferential or so-called tenure rights of teachers, and leaves the township officers free to renew teachers' contracts or not as may be deemed expedient.

Judgment affirmed.

## ON PETITION FOR REHEARING.

FANSLER, J. —On petition for rehearing, appellant earnestly contends that the decision of this case gives

a retroactive effect to a statute, and permits the impairment of the obligation of a binding contract. The original opinion was intended to be understood as expressing the view that no contractual right to be continued as a teacher from year to year is involved. The teachers' contracts are made for one year, and the terms may be changed annually. The Tenure Statute, in effect, grants a privilege to the teacher who has served five years, and signed a new additional contract to continue as a teacher, under certain conditions, by limiting the power of the local school officers to employ any one in the place of a tenure teacher. The teacher had no contractual right to continue in employment. The statute merely deprived the local school officers of power to employ any other teacher in place of the tenure teacher, and required that the tenure teacher be reemployed unless there was a necessary reduction in the number of teachers. Schools are under the control of the Legislature, and local government units act only as legislative agencies in the operation of the schools. The statutes, the Constitution, and the law, must be deemed to be a part of every teacher's contract. If appellant's contention could be sustained, it would mean that the statute, as it existed at the time a teacher acquired tenure status, could not be changed, even in respect to the grounds of cancellation or removal.

As pointed out in the original opinion, the Legislature, in enacting school laws, exercises one of the functions of sovereignty. The right to control public policy, in respect to the management and operation of schools, cannot be contracted away by one Legislature so as to fix a permanent public policy, unchangeable by succeeding Legislatures.

But, if the relationship were considered as controlled by the rules of private contract, the provision for re-

employment from year to year is not enforceable for want of mutuality. The teacher may terminate the tenure at any time, except during the school year and for thirty days previous to its beginning, by giving five days' notice. This provision clearly indicates that the statute was not intended to bind the state or the teacher to a permanent relationship; that it was intended only as a limitation upon the discretion of local school officers. *Davis* v. *Davis, Director General of Railroads* (1926), 197 Ind. 386, 151 N. E. 134; *Kostanzer et al.* v. *State ex rel. Ramsey* (1933), 205 Ind. 536, 548, 549, 187 N. E. 337, 342.

The latter case was an action by a teacher to mandate the school board to continue her as a teacher in the schools under the Tenure Statute. It is said in the opinion: "The tenure act permits a teacher to cancel his contract at any time after the close of a school term up to thirty days prior to the beginning of the next school term, provided five days' notice is given, and appellant contends that there was no contract between appellee and appellants for the reason 'that a contract which does not bind both parties binds neither of them.' This proposition is undoubtedly supported by the law of contracts. But there is nothing in the law of contracts to prevent one party to a contract granting to the other the privilege of rescission or cancellation on terms not reserved to the former party. The local school corporations are agents of the state in the administration of the public schools and the General Assembly has the power to prescribe the terms of the contract to be executed by these agents." The controlling principle is that local school corporations, being agents of the state, must follow the statute and continue tenure teachers in employment so long as the statute is unrepealed. It is of no consequence whether the tenure rights are based upon a contractual obligation or upon a mere

privilege granted by the state revocable at will.. The ministerial agents must obey the statutory mandate in either event. But now the statute has been repealed. The Legislature is no longer exercising discretion in the matter of reemployment. That discretion is again lodged in the local officers. It is now contended, not that ministerial officers must follow the dictates of the Legislature, but that the Legislature itself is bound by contract to continue teachers' tenures; that the tenure arises out of a contract which created a vested right and not out of a mere privilege or by grace. No question of the state being bound by contract creating a vested right was presented in the Kostanzer case. Teachers have no contractual right to a license, but, when they have complied with the statutory requirements, ministerial officers may be mandated to grant the license. The statement that "there is nothing in the law of contracts to prevent one party to a contract granting to the other the privilege of rescission or cancellation on terms not reserved to the former party," is correct as an abstract proposition of law, but it is not without limitation. In contracts for personal services, the provision granting a privilege to the employee to cancel or rescind at will must be supported by some consideration independent of the reciprocal agreements to render service and to be paid for services rendered. It is said in Williston on Contracts, §104, p. 351, that: "The promise of either party may be optional, if the exercise of the option not to employ or to serve involves a detriment to the promisor, or benefit to the promisee." See *McMullan* v. *Dickinson Co.* (1896), 63 Minn. 405, 65 N. W. 661. Where an employer, as part of the agreement in settlement of a claim for damages arising out of negligence, agrees to give the employee permanent employment, and the employee is left free to cancel and leave the employment, the contract is not

bad for want of mutuality for the reason that the settlement is payment in advance for the privilege of discontinuing the employment at will. Other similar considerations might be suggested, but it is well settled that, where the term of service is left to the discretion of one party, it is a contract at the will of either and may be terminated by either. It has been said that where the terms of a contract of employment give a privilege to one party to terminate the contract, the law will extend the privilege to the other. *Pennsylvania Co.* v. *Dolan* (1892), 6 Ind. App. 109, 32 N. E. 802; *Cox* v. *Baltimore & O. S. R. Co.* (1913), 180 Ind. 495, 103 N. E. 337.

It is contended that the opinion gives the repealing statute retroactive effect, but it does not. All annual teaching commitments continue, and the repeal ▬ acts only prospectively by striking down for the future those limitations which the statute placed upon the discretion of local school authorities with respect to reemployment of teachers for successive years.

Since the original opinion was filed, the Supreme Court of the United States has sustained the Court of Errors and Appeals of the State of New Jersey in appeals from two cases involving a situation comparable in all substantial respects with the case at bar. *Phelps* v. *Board of Education of Town of West New York et al.; Askam et al.* v. *Board of Education of Town of West New York et al.* (1937), 300 U. S. 319, 57 S. Ct. 483.

Petition for rehearing denied.

### SUPPLEMENTAL OPINION
(On Mandate of United States Supreme Court.)

FANSLER, J.—The decision in this case was reviewed by the Supreme Court of the United States, and an opinion was delivered and filed on January 31, 1938. See

*State ex rel. Anderson* v. *Brand, Trustee, etc.,* 303 U. S. 95, 58 S. Ct. 443.

The opinion of the United States Supreme Court assumes that this court considered only the question of whether the relatrix' contract vested in her tenure rights protected by the Constitution of the United States. It is said in the opinion (p. 104) : "But we are of opinion that the petitioner had a valid contract with the respondent, the obligation of which would be impaired by the termination of her employment." The decision does not discuss or pass upon the nature of the remedy available. The remanding order is as follows (p. 109) : "As the court below has not passed upon one of the grounds of demurrer which appears to involve no federal question, and may present a defense still open to the respondent, we reverse the judgment and remand the cause for further proceedings not inconsistent with this opinion."

The demurrer is for want of facts. One of the specifications is that the plaintiff's action is founded upon a statute which has been repealed. Where a demurrer is sustained by the trial court, this court will affirm, if, for any reason, the ruling of the trial court is correct. *Poer, Trustee* v. *State ex rel. Hinshaw* (1919), 188 Ind. 55, 121 N. E. 83; *Bruns* v. *Cope* (1914), 182 Ind. 289, 105 N. E. 471.

This action is brought in the name of the State on the relation of Dorothy Anderson. It seeks to mandate the school authorities to reinstate the relatrix as a teacher and continue her in employment. It is not an action by Dorothy Anderson to enforce her contract, but an action to require a public officer to perform a duty required of him by law, which can be maintained only in the name of the State.

In *School City of Elwood et al.* v. *State ex rel. Griffin et al.* (1932), 203 Ind. 626, 634, 180 N. E. 471, 474, 81

A. L. R. 1027, 1032, it is clearly recognized that it is because of "the duty of appellants imposed by the same" (the statute) "that mandamus is the proper remedy in this case." Section 1245, Burns' Ann. St. 1926, cited in the opinion, is as follows: "The action for mandate may be prosecuted against any inferior tribunal, corporation, public or corporate officer or person to compel the performance of any act which the law specifically enjoins, or any duty resulting from any office, trust or station."

In *Kostanzer et al.* v. *State ex rel Ramsey* (1933), 205 Ind. 536, 547, 187 N. E. 337, 341, 342, it is said: "If appellee's position is not an office appellants insist that mandamus is not available for the reason that the granting of mandatory relief results in enforcing a purely contractual right. It is true that mandatory relief against appellants will result in enforcing appellee's rights under her contract; but the duty which the judgment of the trial court compelled appellants to perform was a duty enjoined by statute and not by contract. The contract between appellants and appellee created a relation which entitled appellee to have appellants perform the duty in question; but the duty was not imposed by any provision of the contract."

It was thought by this court when the above cases were decided, and when this case was decided, that the enforcement of tenure rights depended entirely upon the statutory duty of the school officers to continue the teacher in employment, and that the teacher's only protection was an action in mandate in the name of the State to enforce the performance of a statutory duty by the school officers. In the Kostanzer case we said that the tenure rights were created "by statute and not by contract." The United States Supreme Court has concluded that the teacher's contract creates tenure rights which the repeal of the statute cannot strike down and destroy. The protection

afforded the relatrix by the federal Constitution is that her contractual rights shall not be impaired by state legislation. This is the question, as we understand it, that was passed upon by the United States Supreme Court. That court held the repeal of the statute to be ineffectual to strike down the teacher's contractual tenure rights. We conclude that the repeal of the statute is otherwise valid in all respects, and therefore there is no longer any statutory duty which requires the school officers to continue the teacher in employment. The school officers therefore cannot be mandated. The teacher's rights under her contract must be enforced in a civil action upon the contract in her own name. See *City of Peru et al.* v. *State ex rel. McGuire* (1935), 210 Ind. 668, 199 N. E. 151, and *State ex rel. Ham* v. *Hulley, Mayor, et al.* (1922), 192 Ind. 547, 137 N. E. 777.

Much was said about the contract in the original opinion, ineptly perhaps, for the purpose of showing that the tenure right was not created by the contract, and that, since it depended upon a statute which had been repealed, there was no such right. It followed that, there being no such right, the action for mandate would not lie, and the demurrer was properly sustained. The United States Supreme Court has concluded that the tenure right was created by contract also, but the contractual right cannot be enforced by an action in mandate. Contractual rights must be enforced by an action at law or in equity in the name of the injured contracting party. We must still conclude therefore that the complaint in the name of the State for mandate does not state a cause of action.

Judgment affirmed.

### DISSENTING OPINION.

TREANOR, J., Dissenting—I cannot agree with the

reasoning and result reached by the majority of the Court for two reasons.

(1) The 1933 Amendment to the Teachers' Tenure Act should be given a prospective effect in accordance with the well recognized rule that statutes "are construed as operating only in cases or on facts which come into existence after the statutes were passed unless a retrospective effect be clearly intended."[1]

(2) If, in order to give effect to legislative intent, the 1933 Amendment must be construed to operate retrospectively the legislative enactment violates the inhibitions of the United States Constitution and the Indiana Constitution against impairment of contracts.

No rule of statutory interpretation is more generally taken for granted than the rule that statutes will be treated as prospective rather than retrospective. Such a rule is supported by a sense of justice and fair dealing and is in accord with the elementary distinction between judicially and legislatively declared rules. Normally a legislatively declared rule applies to future conduct; while a judicially declared rule governs past as well as future conduct. Consequently when a statute attaches certain legal consequences to certain stated conduct, no court would tolerate the suggestion that such consequences would attach to conduct which occurred prior to the effective date of the statute, unless the statute requires such retroactive effect either by express provisions or by necessary implication.

The English cases consistently give effect to the presumption that statutes operate prospectively rather than retrospectively; and these cases emphasize the inherent validity and justice of the presumption since the English courts are under no constitutional pressure to deny a retroactive effect to statutes in order to avoid a

---

1. Maxwell, Interpretation of Statutes, 7th Ed., p. 186.

construction which would render the statute invalid because of violation of a constitutional inhibition against impairment of contract. It is stated in the leading English authority on interpretation of statutes that "It is a fundamental rule of English law that no statute shall be construed to have a retrospective operation unless such a construction appears very clearly in the terms of the Act, or arises by necessary and distinct implication."[2] The foregoing rule is supported by the following statement of a leading English case. "No rule of construction is more firmly established than this: that a retrospective operation is not to be given to a statute so as to impair an existing right or obligation, otherwise than as regards matters of procedure, unless that effect cannot be avoided without doing violence to the language of the enactment. If the enactment is expressed in language which is fairly capable of either interpretation, it ought to be construed as prospective only."[3]

The statements of American courts are substantially the same as those of the English courts. It is stated in Lewis' Sutherland Statutory Construction that "The general rule is that statutes will be construed to operate prospectively only, unless an intent to the contrary clearly appears."[4] In support of the foregoing statement numerous excerpts of decisions of state courts are quoted; of which excerpts the following is typical: "The rule is that statutes are prospective, and will not be

2. Maxwell, Interpretation of Statutes, 7th Ed., p. 186.
3. Quoted from *Athlumney, In re* (1898), 2 Q. B.; Wright, J., at pp. 551-552.
Quoting from Maxwell on Interpretation of Statutes at page 187: "It is chiefly where the enactment would prejudicially affect vested rights, or the legality of past transactions, or impair contracts, that the rule in question prevails. Every statute, it has been said, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect of transactions or considerations already past, must be presumed, out of respect to the Legislature, to be intended not to have a retrospective operation."
4. Sec. 642, p. 1157.

construed to have retroactive operation unless the language employed in the enactment is so clear it will admit of no other construction."[5]

The objections which are urged against retrospective operation of a new statute apply with equal validity to the repeal of a statute when a retrospective operation would have the effect of destroying legally protected interests which have been created by operation of the statute. "A law can be repealed by the law-giver; but the rights which have been acquired under it while it was in force do not thereby cease. It would be an act of absolute injustice to abolish with a law all the effects which it had produced."[6] Consequently in the case of a repeal of an existing statute, the same as in the case of an enactment of a new statute, courts have assumed that the legislative intent was not to give a retrospective operation, unless the contrary was clearly indicated by the terms of the repealing act.

By the terms of the Teachers' Tenure Act of 1927 (Acts 1927, c. 97, p. 259) township school corporations were included within its scope; and the 1933 Amending Act (Acts 1933, c. 116, p. 716) excludes township school corporations merely by omitting the words "any school corporation" and substituting therefor "any school city corporation or . . . any school town corporation." There is nowhere in the Amending Act of 1933 any express declaration of an intention of the General Assembly to give the Amending Act retrospective effect.

The General Assembly enacted the repealing act with knowledge that this Court follows the rule that statutes are presumed to operate prospectively rather than retrospectively; and this Court should assume that the legislative intent was for this presumption to prevail, since

5. Quoted from *Bauer Grocer Co.* v. *Zelle* (1879), 172 Ill. 407, 50 N. E. 238.
6. Lewis' Sutherland Statutory Construction, 2d Ed., p. 547.

nothing to the contrary appears in the Act. And since there appears to be no reason why the constitutionality of the Amending Act would be imperiled by construing it to operate prospectively only, this Court is under no compulsion to construe it to operate retrospectively in order to save its constitutionality. Consequently, this Court, being under no compulsion to favor retrospective operation, is under a compulsion to follow the general rule that a statute should be construed to operate prospectively in the absence of any indication in the Act itself of the legislative intention that it operate retrospectively.

In accordance with the foregoing it is my belief that the Amending Act of 1933 should be construed to operate prospectively, and to leave unimpaired the rights and privileges of township teachers which were acquired under their indefinite contracts prior to the effective date of the Amending Act of the 1933 General Assembly.

But if the Amending Act must be construed to operate retrospectively, I am of the opinion that it violates Article 1, Sec. 24 of the Indiana Constitution, and Article 1, Sec. 10 of the Federal Constitution.

Prior to the enactment of the Teachers' Tenure Act of 1927 the employment relationship between a school corporation and a teacher was created and governed by a contract, and was legally binding upon both teacher and school corporation. The ordinary contract was for a fixed period; usually for a single term of school. In view of numerous decisions of the Supreme and Appellate Courts of this state it is clear that such a contract carried with it all the rights and duties of contracts generally. Since such contracts were for personal services the only remedy which a teacher had in case of breach of contract by the school corporation was to sue for dam-

ages. In such a suit the usual rules regulating recovery of damages for breach of contract were applied by the courts. While it was often said that a school corporation could dismiss a teacher for cause, this necessarily could have meant, under the decided cases, only that a school corporation could abrogate its contractual relations with the teacher if the teacher was unable or unwilling to substantially perform his contract. This was merely an application of the general rule that one party to a contract can rescind in case of failure of performance by the other party.

The Tenure Act did not change the method of creating the employer-employee relationship between school corporations and teachers, but only changed the incidents of the contract which creates the relationship. As long as the contract which creates the employer-employee relationship between a school corporation and a teacher has not ripened into an indefinite contract, the school corporation can repudiate the contract and the only recourse that the teacher has is to sue for damages. But Section 1 of the Act of 1927, *supra*, expressly provides that an indefinite contract "shall remain in force unless succeeded by a new contract signed by both parties or unless it shall be cancelled as provided . . ." in the act. This deprives the school corporation of the legal power to repudiate indefinite contracts of employment with permanent teachers and gives to the teacher the legal right to continue in the employer-employee relationship with the school corporation under the terms and conditions of the indefinite contract. The legal result is that the teacher has a legally protected tenure of position until the same is terminated in accordance with the provisions of the statute.

When a court of competent jurisdiction decides that a school corporation unlawfully has declared the cancellation of an indefinite contract, the factual and legal result

is that the indefinite contract has not been cancelled, but is in full force and effect. And when the court further adjudges that the order purporting to cancel the contract should be set aside, and that the teacher should be reinstated in her position, the factual consequence is that the school corporation is being compelled specifically to perform its contract to continue the teacher in the employer-employee relationship.

In short, under an indefinite contract, a permanent teacher enjoys a legally enforceable right to be continued in his position as a teacher. This right is of equal validity with the right to recover damages for breach of a non-tenure contract; and is equally the creation of a contract. There are at present thousands of teachers in Indiana who have not become permanent teachers under an indefinite contract but are employed under a contract for a definite period of service. If the present General Assembly should decide to change the policy of authorizing school corporations to contract with teachers and to substitute the policy of appointing teachers at pleasure; and in pursuance of that policy should deprive school corporations of the power to enter into contracts of employment with teachers; and should further provide that all contracts heretofore entered into should be abrogated, it is not conceivable that such action could deprive a non-tenure teacher of his right to recover damages for breach of contract in case his employing school corporation, acting under such statute, should refuse to carry out the existing contract of employment in accordance with its terms. It seems to the writer equally inconceivable that the General Assembly can abrogate an existing indefinite contract and thereby destroy the valid legally enforceable right of tenure which is a legal incident of the contract; and which, as above pointed out, is as essential an element of the indefinite contract as the right to recover damages is of a non-tenure contract.

The majority opinion assumes that the legal quality of the so-called "indefinite" contract is vitiated by its indefiniteness. But it is indefinite only in respect to the life of the contract, which is not limited to a definite and fixed period of time, although the Act provides for a definite method of ending the contract relation. At any particular time in the life of the contract all the terms which affect its performance are definite. It is true that provision is made in the statute for changes by mutual consent of school corporation and teacher, and for some changes without the consent of the teacher. But many contracts between private persons have provisions which authorize change in the manner and time of performance, and it has never been supposed that such provisions affect the legal quality of the contract. The contractual relationship which arises as a result of the mutual agreement of the parties remains legally unimpaired, although the mutual obligations of the parties may have been varied by modification of the original terms and conditions of the contract. And if we grant that the General Assembly has the constitutional power to authorize school corporations and teachers to enter into a contractual relationship of indefinite duration, it necessarily follows that the fact of indefiniteness of duration can not, in and of itself, qualify the contractual rights of the contracting parties. The only purpose and effect of the statutory requirement that the contract should continue for an indefinite period of time is to avoid setting an arbitrary limit to the time element of tenure. Instead of authorizing and requiring an indefinite contract the General Assembly might have provided that the last contract of the probationary period of service should continue for ten years; in which case the legally enforceable period of tenure would be definitely limited to ten years. Whether tenure is protected and made legally enforceable for an indefinite period of time, or only for a fixed and definite

period of time, can make no difference in the legal quality of the contract.

Numerous decisions of this Court support the following statement in the majority opinion: "The establishment and maintenance of public schools is a governmental function, jurisdiction over which vests in the General Assembly, whose power, subject to constitutional limitation, is plenary, and whose discretion is not reviewable. This legislative power is not exhausted by exercise, and schools may be continued or discontinued, and the school system changed, or one system substituted for another, as often as the Legislature may deem it necessary or advisable in the public interest." But the foregoing does not validate the conclusion that the General Assembly can destroy the legal consequences of acts which have been performed under the sanction of statutes which have been enacted for the purpose of giving effect to a legislative policy respecting the school system of the state. If the method or system devised by the General Assembly for the purpose of carrying out its educational policies includes the creation of contractual relations between the state, or its sub-divisions, and private persons, it does not follow that the repeal of the statute which authorized such contractual relations destroys the rights of private persons who have entered into contracts with the state or its local agencies. This is pointed out in the following excerpt from an opinion of the Supreme Court of Wisconsin[7]: *"In State ex rel. Harbach v. Mayor, etc.,* decided herewith, 189 Wis. 84, 206 N. W. 210, it is held that the entire field of education in this state is one of state affairs and regulations rather than one belonging to the local affairs or government of municipalities. Evidently, therefore, when the State by the law of 1921 expressly required (although undoubtedly the same effect

7. *State ex rel. O'Neil* v. *Blied* (1925), 188 Wis. 442, 445, 206 N. W. 213.

would have been reached by its other provisions were such precise provisions omitted) that the State on the one hand and the teachers complying with the law on the other should come under certain fixed contractual obligations, the State cannot now lawfully withdraw or be relieved from such obligations by subsequent legislation.

"One engaging in teaching in this state and whose services are to be paid for in whole or in part by the state school fund is not a public officer and his valid contracts cannot lawfully be destroyed or impaired by subsequent legislation, because such contracts are within the protection of sec. 12, art. I, Wisconsin constitution, prohibiting the passage of any law impairing the obligation of contracts, as well as by sec. 10, art. I, of the Constitution of the United States, prohibiting any state from passing any such law."

The majority opinion assumes that the General Assembly has the power to revoke all licenses of teachers and that the revocation of tenure teachers' licenses "would of course carry with it the indefinite contract." The opinion continues as follows: "The contract, like the license upon which it rests, is a privilege granted by grace of the sovereign for the purpose of promoting the good order and welfare of the state. The license is broader in its bearing than the contract. Without the license a tenure contract cannot exist. Since there is legislative power to revoke the license and thus destroy the contract, there must necessarily be power to do the lesser thing, and merely revoke the tenure contract without cancelling the license."

Granting that the General Assembly can revoke all existing licenses and that such action would make ineffective all present contracts of teachers, it does not follow that the General Assembly can abrogate all existing contracts, without revoking all licenses. The decided

cases which have held that a "mere license" is revocable have all pointed out that "A license has none of the elements of a contract, and does not confer an absolute right, but only a personal privilege to be exercised under existing restrictions and such as may thereafter be reasonably imposed."[8] Revoking a license ·does not offend against the state and federal constitutional prohibition against impairment of contract; and while it is true that neither a tenure contract, nor a non-tenure contract, can exist between one who is not licensed to teach and a school corporation, yet the fact remains that at.the effective date of the repeal act of 1933 the General Assembly had not revoked licenses and the contracts affected by the repeal were existing and valid contracts.

It is stated in the majority opinion that "The tenure statute was only intended as a limitation upon the plenary power of local school officials to cancel contracts." The foregoing statement is not justified by the decisions of this Court if it must be understood to imply that prior to enactment of the Tenure Act school officials had plenary power to abrogate contractual obligations. Prior to the enactment of the Tenure Act the school officials did have full discretion in the selection of teachers from among qualified applicants; and at the expiration of the usual one school-term contract the school corporation was under no legal obligation to re-employ any particular teacher under a new contract. But school officials have not had at any time plenary power· to cancel contracts in the sense that they could end legal liability thereunder.

I can not agree with the implications of the statement in the majority opinion that "The contract, like the license upon which it rests, is a privilege granted by grace of the sovereign for the purpose of promoting the good order and welfare of the state." In a sense all contractual

8. *Stone* v. *Fritts* (1907), 169 Ind. 361, 365, 82 N. E. 792.

relationship is by the grace of the sovereign, because it is only by grace of the sovereign that the law attaches legally enforceable rights and duties to voluntary agreements which are denominated contracts. And in the case of indefinite contracts between school corporations and teachers it is the voluntary mutual consent of the parties that creates the contractual relationship, although the legal incidents of the relationship are determined by the terms of the statute which authorizes and governs that particular class of contracts. But such a contract is no more "a privilege granted by grace of the sovereign" than is a contract of sale and purchase of a parcel of land.

It is evident that the purpose of the indefinite contract provisions of the Act of 1927 was to give to indefinite contracts the legal quality of the ordinary teacher contracts which provide for a definite term of service. And this court has held that one who had become a permanent teacher under an indefinite contract with a township school corporation had acquired a right to hold his teaching position until the indefinite contract should be cancelled in accordance with the provisions of the Act of 1927, and that this right was legally enforceable. Compensated employment is surely a thing of value; and a legally enforceable right to be continued in such employment for even a short period of time is such a vested interest that it cannot be destroyed or impaired by subsequent legislation, even though it is enjoyed under a contract which has been authorized for the public interest.

The school code of California has contained permanent tenure provisions for many years, and the Supreme Court of that state has discussed at length many of the problems involved in the application of the various tenure provisions; and has declared unequivocally that a tenure teacher enjoys vested rights which cannot be taken away by subsequent legislation. The view of the California

court is clearly indicated by the following excerpts from its opinions:

"Assuming that petitioner automatically attained permanent tenure prior to August 14, 1931, at which time the repeal of sections 5.500 to 5.502 of the School Code, as they then existed, occurred, that status was not lost by virtue of failure on the part of the Legislature to adopt, as part of the repealing act, a saving clause." *Gastineau* v. *Meyer* (1933), 131 Cal. App. 611, 617, 22 P. (2d) 31, 33.

"Moreover, the last-mentioned section was enacted after the petitioner in this case had acquired permanent tenure by operation of law, and for that reason it could in no way affect his vested right to the enjoyment of that status." Id. p. 618.

"The language of this subdivision has remained substantially the same from its enactment in 1881 to its repeal by the School Code of 1929 (St. 1929, p. 303, §10.3). *Anderson* v. *Board of Education,* 126 Cal. App. 514, 516, 15 P. (2d) 774, 16 P. (2d) 272. Of course, any tenure previously acquired by respondent was a vested right and remained unaffected by such repeal. *Gastineau* v. *Meyer,* 131 Cal. App. 611, 22 P. (2d) 31. In fact, section 5 of the preliminary provisions of the 1929 School Code (St. 1929, p. 1) recognized and continued previously acquired tenure." *Klein* v. *Board of Education* (1934), 1 Cal. (2d) 706, 708, 37 P. (2d) 74, 75.

It is not clear that the Supreme Court of California entirely relied upon the rule that tenure rights can not be divested by act of the Legislature in deciding the cases in which the language above quoted was used. But the court clearly recognized the legal soundness of the rule that tenure rights are vested and are immune from legislative impairment.

The opinion of the Wisconsin Supreme Court in *State ex rel. O'Neil* v. *Blied, supra,* has been referred to, and quoted from, and this case was cited in a later decision of the Wisconsin Court[9] as holding "That the status of one permanently employed as a teacher under such a

9. *State ex rel. Nyberg* v. *School Directors* (1926), 190 Wis. 570-575, 209 N. W. 683.

system and with the rights so fixed cannot be impaired by subsequent legislation."

In *Hall* v. *Wisconsin*[10] the Supreme Court of the United States considered a situation which does not seem to differ in its merits from the instant case. By Act of the Wisconsin Legislature, Hall and two others had been appointed "commissioners" to make a "geological, mineralogical and agricultural survey of the state." By the terms of the Act the governor was required to enter into a written contract with each commissioner. The governor was authorized to fill vacancies in the commission and "to remove any member for incompetency or neglect of duty." On the 29th day of May, 1858, Hall entered into a contract with the governor which bound Hall to perform his duties; and it was stipulated that the contract should " 'continue till the third day of March, 1863, unless the said Hall should be removed for incompetency or neglect of duty, . . . or unless a vacancy shall occur in his office by his own act or default.' "

"On the part of the State it was stipulated 'that the said Hall shall receive for his compensation and expenses, including the expense of his department of said survey, at the rate of $2,000 per annum. . . . Provided that for such time as said Hall or his assistants shall not be engaged in the prosecution of his duties, according to the terms of said act and of this contract, deduction shall be made, pro rata, from the sum of his annual compensation and expenses.' "

By a subsequent Act of March, 1862, Act of 1856 providing for the survey and appointing Hall a commissioner, and a later Act of 1860 relating to the commission were repealed without qualification. Hall sued to recover for his services from March 1862 to March 3, 1863. The views of the United States Supreme Court,

10. (1880), 103 U. S. 5, 6, 7, 10.

which seem applicable to the present case, are fully disclosed by the following excerpts from the opinion (p. 10):

"In a sound view of the subject it seems to us that the legal position of the plaintiff in error was not materially different from that of parties who, pursuant to law, enter into stipulations limited in point of time, with a State, for the erection, alteration, or repair of public buildings, or to supply the officers or employes who occupy them with fuel, light, stationery, and other things necessary for the public service. The same reasoning is applicable to the countless employes in the same way, under the national government.

"It would be a novel and startling doctrine to all these classes of persons that the government might discard them at pleasure, because their respective employments were public offices, and hence without the protection of contract rights.

"It is not to be supposed that the plaintiff in error would have turned his back upon like employment, actual or potential, elsewhere, and have stipulated as he did to serve the State of Wisconsin for the period named, if the idea had been presented to his mind that the State had the reserved power to break the relation between them whenever it might choose to do so. Nor is there anything tending to show that those who acted in behalf of the State had any such view at that time. All the facts disclosed point to the opposite conclusion as to both parties."

I do not understand the decision in this case to be placed upon the ground that the abrogation of the indefinite contract was within the police power, although the appellees in *State ex rel. Jones* v. *Kerr, Trustee* (1937), 211 Ind. 703, 5 N. E. (2d) 533, urge that "If the social interest in freedom from permanent contracts in public child education or in township government is par-

amount to the social interest in permanent contracts for public school teachers, the Legislature in the proper exercise of the police power of the State, may repeal such contracts." The Supreme Court of Indiana and the Supreme Court of the United States recognize that contractual obligations are subject to the police power. But to uphold such legislative subjection in any particular instance courts must be able to say that a vital social interest is protected by the subjection; and that such interest is paramount to "the social interest of the individual in the security and integrity of contractual relations into which he has entered, or the social interest in the general security of legal transactions."[11] Furthermore, in the instant case, it would be unreasonable for this Court to assume that public health, morals, safety or even the indefinite general welfare is promoted by eliminating township school corporations and their teachers from the tenure policy in view of the retention of that policy by the General Assembly for city school corporations and town school corporations; and especially since this Court has declared that the Teachers' Tenure Act is based upon the public policy of protecting the educational interests of the state and that the act should be construed liberally to affect its general pur-

---

11. Willis, Constitutional Law, p. 745.

"This social interest is really two social interests: first, the social interest in the performance of a contract by a promisor; . . . The first social interest was one of the most important recognized by the common law and was protected by the law of trusts and by what is known as the law of contracts, both of which have been constantly growing and enlarging in scope throughout the centuries. . . .

"The social interest in promised advantages recognized by the common law also received express recognition in the United States Constitution in the clause forbidding the states to impair the obligation of a contract. . . . The due process clause, as we have already seen in this chapter, has also been extended to afford protection against the impairment of the obligation of a contract, so that the social interest in promised advantages has now been recognized by the United States Supreme Court as a limitation on both the federal and the state governments."

pose since it is legislation in which the public at large is interested.[12]

The indefinite contract between appellant-relator Dorothy Anderson and Chester School Township was a valid, existing contract at the effective date of the Amending Act of 1933; and by virtue of that contract the relator had acquired the legally enforceable right to be continued in her position of teacher in the schools of Chester School Township. And in my opinion the Amending Act, under the construction placed upon it by the majority decision, violates Articles 1, Sec. 24 of the Indiana Constitution and Article 1, Sec. 10 of the Federal Constitution. "The law, under which the contract was executed, is to be and remain the only rule by which the contract shall be construed. The obligations shall not be increased, nor the rights diminished, by any Act of future legislation."[13]

12. *State ex rel. Clark* v. *Stout, Township Trustee* (1933), 206 Ind. 58, 64, 187 N. E. 267; *Whitlatch* v. *School Township of Milan* (1935), 209 Ind. 75, 198 N. E. 85, 87.
13. *Lewis* v. *Brackenridge* (1822), 1 Blackf. 220, 221.