CITY OF EAST CHICAGO ET AL. *v.* STATE EX REL.
PITZER ET AL.

[No. 28,359. Filed March 22, 1949. Rehearing denied
April 27, 1949.]

242

*Lloyd J. Cohen,* and *Allen P. Twyman,* both of East Chicago, and *Howard Hiestand,* of Kentland, for appellants.

*Jay E. Darlington,* of Hammond, for appellees.

YOUNG, J.—The relators brought this action against the City of East Chicago and its named officers for the purpose of seeking a writ of mandamus to require the appellants to recognize relators as members of the fire force of the City of East Chicago.

After considerable delay the case was tried in an adjoining county and the court found for the relators and entered the following decree:

"Now Therefore, It is finally ordered, adjudged and decreed that defendants are each hereby mandated and commanded to recognize each of the relators as now being, and having been ever since January 1, 1939, members of the fire force, with the rank of pipemen, in good standing, of the City of East Chicago, Indiana; and to allow relators to enjoy now and hereafter all the rights, privileges, status and benefits pertaining to such membership, including equal use of the physical facilities of the fire stations, the right to continue performance of their duties as such members without discrimination or obstruction by respondents, the right to receive the same compensation as other pipemen of said force, and the right to participate in the firemen's pension fund of said city, their benefits and retirement rights under said fund to be based upon and dated from the said beginning of their membership in said fire force, January 1, 1939, provided that relators shall pay into said fund the same amounts of money paid by other pipemen from January 1, 1939, forward. And it is further ordered that respondents shall each do and perform all those several acts and functions required of them by law with reference to members of said fire force such as relators have been adjudged to be, and also do all those acts which are necessary and incidental to carrying out and consummating the duties above

mandated; and this mandate shall remain binding upon the successors in office and of each of them."

The City and its officers appealed. The facts are not in dispute and the case turns upon a construction of § 159, ch. 129, of the Acts of the Indiana General Assembly of 1905, (Burns' 1933, § 48-6102.) but before reaching the merits of the case we are confronted by appellee's contention that this court is without jurisdiction of this appeal because the transcript was lodged in this court too late. This position is predicated on the following facts: On December 4, 1946, the court made the following entry in its record in this case, "This cause having been taken under advisement, the court, being duly advised in the premises, now finds for the plaintiff and that the allegations of the plaintiff's complaint are true, and that the relief prayed for in the complaint should be granted. Parties are granted ten days within which to submit proper form of order herein." No form of order was submitted within ten days and no further action was taken in the case until January 24, 1947, when the court again made an entry finding for the relators. It found the facts in detail and in connection with this finding entered the decree from which this appeal is taken. A motion for a new trial was filed on February 15, 1947, and was overruled on June 14, 1947, and the transcript and assignment of errors was filed in this court on September 11, 1947. It is the contention of appellee that the entry of December 4 constituted a decision of the case and that appellant's time for filing a motion for a new trial started to run at that time, but that the motion was not filed within 30 days from that date.

If appellee is right in its contention that the entry of

December 4, 1946, constituted a decision of the case, then the motion to dismiss should be sustained, but we cannot agree with appellee's contention in this respect. It is apparent from the language of the entry that it was merely preliminary to the real decision which was to be incorporated in a formal order later to be submitted by the parties. It was in a manner interlocutory and we regard it as a direction to counsel to prepare a final order and decree rather than a final decision. *McClelland* v. *McClelland* (1932), 170 Wash. 170, 15 P. 2d 941, 943.

Until final judgment was rendered the case was *in fieri,* and the court could change its decision with or without cause. II *Cooley's Blackstone,* Book III, p. 1155 (4th Ed.) 407; *Mak-Saw-Ba Club* v. *Coffin* (1907), 169 Ind. 204, 208, 82 N. E. 461; *Thompson et al.* v. *The Connecticut Mutual Life Insurance Co. et al.* (1894), 139 Ind. 325, 356, 38 N. E. 796; *Dunn* v. *Starke Co. Trust and Sav. Bk., Execr.* (1933) (Transfer denied), 98 Ind. App. 86, 89, 184 N. E. 424.

In *Mak-Saw-Ba Club* v. *Coffin, supra,* this court said that so long as a cause is *in fieri* intermediate orders are subject to modification or rescission by the court and to this proposition cited *Boonville Nat. Bank* v. *Blakey* (1906), 166 Ind. 427, 76 N. E. 529; Elliott, *Appellate Procedure,* § 83; 15 Ency. Pl. and Pr. 352; 23 Ency. Law and Proc. 905.

In *Thompson et al.* v. *The Connecticut Mutual Life Insurance Co. et al., supra,* it was said by this court: "We are, therefore, of opinion that the trial judge should, in all cases, be permitted to amend his special findings and conclusions of law, at any time before final judgment and during the period within which a bill of exceptions containing the evidence may be filed; . . ."

In *Dunn* v. *Starke Co. Trust and Sav. Bk., Execr.,* *supra,* the court used the following language: "The finding is intended to be a finding by the trial court. The trial court can change its finding or amend it in any way it sees fit at any time before judgment is rendered. This can be done by the court on its own motion, or upon motion, written or oral, of the attorneys in the case. The finding in its final form, when judgment is rendered, is the finding *of the court,* regardless of whether or not it was changed. . . ."

On January 24, 1947, this case was still *in fieri.* Final judgment had not been rendered. On that day a new finding was entered upon which the decree entered at the same time was based. Even if the entry of December 4, 1946, had been more than a mere direction to counsel, it still would be subject to change by the court until judgment was rendered and if changed the later finding became the finding of the court. In our opinion the controlling finding in this case was the finding of January 24, 1947, and the date for filing a motion for a new trial ran from that time and the motion for a new trial was filed within time and this appeal was perfected in time and this court is not without jurisdiction as contended by appellee.

The record shows that on September 1, 1938, the city council had passed a budget and tax ordinance appropriating funds for the payment of 68 firemen in 1939, and fixing the salaries of firemen and levying taxes for all city purposes. Prior thereto there had been only 58 city firemen and no new firemen had been appointed prior to the meeting of the Board of Public Works and Safety on December 31, 1938. So far as the record shows there had never been an ordinance of the city council fixing or limiting the number of firemen.

On January 1, 1939, there was to be a change of city administration and on December 31, 1938, a meeting of the Board of Public Works and Safety of the City of East Chicago was held. The minutes of that meeting show that it was held in the office of the board in the City Hall at 10:30 o'clock A. M., with all members of the board present. After showing the reading and approval of the minutes of the previous meeting the minutes read as follows: "A motion was made by Campbell with Stepanovich that the following: Peter Tumbas, Claude Farmer, Lewis G. Pitzer, Donald Strohm, Albert Demeter, Andrew J. Reppa, Ernest Potesta, Louis Vernocy, Gene Bednarowicz, John Jakush, who have filed applications for positions on the East Chicago Fire Department and have filed medical certificates showing that they are physically qualified are hereby appointed as pipemen on the Fire Department of the City of East Chicago, Indiana, the appointments to become effective on January 1st, 1939, at 12:01 A. M. and said appointees are ordered to report for duty to the Chief of the Fire Department, Ivan Friend, at the Central Fire Station at 12.01 A. M. on January 1st, 1939." The minutes then show the unanimous adoption of this motion by the affirmative vote of all members of the board. There were then two items of routine business shown by the minutes and the meeting adjourned. These minutes are signed by all three members of the board and attested by the Clerk of the board.

The record also shows that each of the relators had made a written application for the position of fireman, and that each had obtained and presented a certificate of satisfactory physical condition by a physician. All of the relators reported for duty to the fire chief a little before midnight on December 31, 1938, and delivered to him letters from the Clerk of the Board of Public

Works and Safety, dated December 31, 1938, notifying the chief of their appointment. He told them to remain for an hour and go home and report the next morning, which they did. The next morning they were notified by a new fire chief, appointed by the new administration, that he would not recognize them as firemen and they were not permitted to perform any duties of a fireman and were barred from the sleeping quarters occupied by firemen. They reported for work every alternate day, which was according to regular schedule, and were ready to do any work they were required or permitted to do. Until January 19 they remained at headquarters and slept in other parts of the building than the sleeping quarters provided for firemen. On January 19 they were ejected from the fire station by police officers. Thereafter relators attempted to have their rights determined by a declaratory judgment. The trial court held they were not entitled to declaratory relief and, upon appeal, this court affirmed the judgment of the trial court. *Pitzer et al.* v. *City of East Chicago et al.* (1943), 222 Ind. 93, 51 N. E. 2d 479. A few days later this action was commenced.

The fundamental question before us, raised by demurrer and by motion for a new trial, is whether relators' appointments on December 31, 1938, were legal and effective. The answer to this question depends upon the construction to be given to the statutes under which the Board of Public Works and Safety purported to act when they appointed relators.

Section 48-6101, Burns' 1933 (Acts of 1905, ch. 329, § 158, p. 219), provides for a Board of Public Safety and says that ". . . *Such board shall have the care,* management, supervision and *exclusive control of all matters* and property *relating to or connected with the fire* and police *forces,* . . ." (Our italics.)

Section 48-6102, Burns' 1933 (Acts of 1905, ch. 129, § 159, p. 219), speaking of the Board of Public Works and Safety, provides that:

". . . *The board shall appoint* a chief of police, a chief of the fire force and *all* other officers, *members* and employees *of such fire* and police *forces,* together with a market-master, station-house keeper, and other officials that may be found necessary for such department of public safety. The annual pay of *all* policemen, *firemen* and other appointees *shall be fixed by ordinance* of the common council; and it shall be lawful in such ordinance to grade the members of such forces and to regulate their pay, not only by rank, but by their length of service. *In default of any ordinance fixing the compensation of any member of such fire or police force, such commissioners shall have the power to fix the same, subject to change by ordinance. The commissioners, subject to ordinance, may also fix the number of members of such fire* and police *forces,* and the number of appointees for other purposes. They shall, in like manner, divide such city into police precincts and fire districts; and they shall have power, *subject to the laws of the state* and the ordinances of the city, *to make and promulgate rules and regulations for the appointment of members of such forces,* and for their government; Provided, That such forces shall be, as nearly as possible, equally divided politically, and no member thereof shall be dismissed except for cause, as provided in the next section. . . ." (Our italics.)

Appellants contend that under the foregoing statute the Board of Works and Safety in 1938 had no power to fix the number of firemen or to appoint additional firemen until authorized so to do by the city council. In speaking of the provision in the statute that the commissioners, subject to ordinance may fix the number of members of the fire force, appellants in their brief say: "This means that the board of

public works and safety in 1938 had no power to fix the number without the common council first adopting an ordinance fixing the number of said members. This was a condition precedent to any power of the board of public works and safety of the city to appoint additional firemen to said force." It is difficult for us to reconcile this quotation from appellant's brief with the language of the statute. If the council must first fix the number of firemen before the board may act there would be no sense in giving the board the power. Fixing by the council would be final, and the language of the statute giving the board the right to fix the number, subject to ordinance, would be meaningless. This violates a well recognized rule of statutory construction. All language in a statute should be given effect if that is possible. *McQuaid* v. *State ex rel. Sigler* (1936), 211 Ind. 595, 599, 600, 6 N. E. 2d 547. The only power to fix the number of members of the fire force is given to the board, subject to ordinance. We construe "subject to ordinance" to permit the council to impose some restraint or limitation upon the power of the board in its exercise of power to fix the number of firemen, but it does not take the primary right away from the board, and at no place does the statute give the council the right to fix the number of members of the fire force.

In construing and determining the effect of the words "subject to ordinance" in that portion of the statute, where it says that the commissioners may fix the number of the members of the fire department, we may look to similar language later in the same section of the statute with reference to the power of the board to make rules and regulations for the appointment of members of the fire department, and for their government. In that portion of the statute, it is said that the board shall have the power to make and pro-

mulgate rules and regulations for the appointment of members of the fire force "subject to the laws of the state." It seems to us that "subject to ordinance" and "subject to the laws of the state" should be similarly construed, and it can hardly be thought that, when the power to make rules was given to the board "subject to the laws of the state," it was the idea of the legislature that the board could not act until the legislature further had acted. "Subject to the laws of the state" clearly means, it seems to us, subject to limitations, if any, by state law existing when the rules and regulations were made by the board. If it means that with reference to power to make rules and regulations, "subject to ordinance," as used in connection with fixing the number of firemen, would seem to mean subject to limitations, if any, by ordinances existing when the number of firemen was fixed by the board. It does not appear that any limitation of the exercise of this right by the Board of Safety was ever imposed by the city council and hence the board acted within its power in appointing relators on December 31, 1938, and the decree should be affirmed to the extent that it orders their recognition as members of the fire force and orders appellants to allow relators now and hereafter to enjoy all the rights, privileges, status and benefits pertaining to such membership, including the right to receive the same compensation as other members of the same rank. In so holding, we have construed the decree as establishing relators' rights to receive compensation only for future service and not as establishing their rights to the same compensation as other members of the same rank from the date of their appointment to the time they may begin performance of the duties of their employment. As to the time during which they have been deprived of the right to serve as firemen, they would not be entitled

to have paid to them salaries at the rates prevailing for members actually serving and performing duties during such period. They would be entitled only to damages for breach of their contracts of employment. [City firemen are employees, not officers, and their remedy, where prevented from discharging their duties and collecting their salaries, is a suit for damages for breach of contract and not by mandate, and the measure of recovery is the amount of salary that would have been paid to them, less sums which they have earned in other employment, *City of Evansville* v. *Maddox* (1940), 217 Ind. 39, 46, and cases cited; 25 N. E. 2d 321; *State ex rel. Anderson* v. *Brand, Trustee* (1937), 214 Ind. 347, 359, 5 N. E. 2d 531, 5 N. E. 2d 913, 7 N. E. 2d 777, 13 N. E. 2d 955; *City of Peru* v. *State ex rel. McGuire* (1936), 210 Ind. 668, 672, 199 N. E. 151; *State ex rel.* v. *Hulley, Mayor* (1922), 192 Ind. 547, 551, 137 N. E. 177, or by reasonable effort could have earned, since it was relators' duty to mitigate their damages by seeking other suitable employment.] 25 C. J. S. 499; 15 Am. Jur. Damages, § 31; *Indianapolis Pipe Line Co.* v. *Christensen* (1924), 195 Ind. 106, 120, 143 N. E. 596; *Hinchcliffe et al.* v. *Koontz* (1890), 121 Ind. 422, 426, 23 N. E. 271. We indulge in this comment with regard to compensation to show that in affirming the decree we do not construe it as requiring that relators be paid, during the period they were excluded from the membership on the fire force, an amount equal to the salaries paid to other members of the force of the same rank during such period of time. The amount, if any, to which they will be entitled for such period is a matter for future determination in a proper proceeding.

Appellants contend that the provisions in the decree to the effect that the relators are entitled to participate in the firemen's pension fund and that their benefits

and retirement rights thereunder shall be dated from January 1, 1939, is contrary to law, and we find no evidence to justify such provision in the decree. There are no allegations in the complaint with reference to participation in said firemen's pension fund and the prayer of the complaint does not specifically cover the right to participate in said fund or to enjoy rights and benefits under the law creating same. The firemen's pension fund is the creature of a statute entirely distinct from the statute hereinbefore set out with reference to appointment of firemen. It is administered by a separate, independent board of trustees, § 48-6501, Burns' 1933, and it is specifically provided in the pension fund statute that the trustees of the fund shall have the power to require and provide for medical examinations of applicants for employment in the fire department, and said trustees are specifically given power to accept or reject any such applicant as a member of the pension fund and it is provided that their decision in such respect shall be final and conclusive. The statute clearly contemplates that there may be members of the fire force who are not participants in the firemen's pension fund, § 48-6506, Burns' 1933. There is no evidence that any of the relators took the medical examination which the statute provides the board of trustees may require and there is no evidence that said board at any time accepted any of the relators as a member of the pension fund.

Relators' rights to participate in and to benefit from the firemen's pension fund were not before the court, and the rights of relators, if any, in this regard are still to be determined in a proper proceeding brought for that purpose. It was error for the court to include in its decree any purported determination of such rights of relators. This error, however,

does not require reversal of the entire judgment. Erroneous portions of a judgment which are distinct from and independent of other portions may be reversed while other proper portions are affirmed. 3 Am. Jur., App. & Err., § 1190, p. 697; *Myers* v. *Sell* (1948), 226 Ind. 608, 81 N. E. 2d 846. And we have a statute to the same effect. It specifically provides that judgments may be reversed in part and affirmed in part, § 2-3233, Burns' 1946 Replacement; *Union National Bank* v. *Finley* (1913), 180 Ind. 470, 481, 482, 103 N. E. 110. We also have § 2-3234, Burns' 1946 Replacement, which provides that when a judgment in a case is reversed in whole or in part the Supreme Court, if no new trial is required, shall remand the cause to the court below, with particular instructions relative to the judgment and of modifications thereof.

The portion of the decree in this case which requires appellants to recognize relators as members of the East Chicago fire force is distinct from and independent of that provision of the decree which has to do with their rights under the firemen's pension fund act, and the decree may be reversed as to one part and affirmed as to the other.

The decree in this case is affirmed as to that part thereof mandating appellants to recognize each of the relators as members of the fire force of the City of East Chicago, Indiana, with the rank of pipemen and to allow relators to enjoy now and hereafter all of the rights, privileges, status and benefits pertaining to such membership and upon assumption of the duties of such membership to receive the same compensation as other pipemen of said force. Said decree is reversed as to that portion thereof mandating appellants to grant relators the right to participate in the firemen's pension fund

of said city and the court is instructed to recast its decree herein in a manner consistent with this opinion.

NOTE.—Reported in 84 N. E. 2d 588.