**INDIANA & MICHIGAN ELECTRIC COMPANY, Appellant,**

v.

**JAY COUNTY REMC, United REMC, City of Bluffton, City of Columbia City, Paulding-Putnam Electric Cooperative Inc., Public Service Company of Indiana, Town of Warren, Whitley County REMC, and Utility Consumer Counselor of the State of Indiana, Appellees.**

No. 2–1285–A–398.

Court of Appeals of Indiana,
Third District.

July 16, 1987.

Rehearing Denied Aug. 18, 1987.

Milford M. Miller, Edward J. Liptak, Livington Dildine Haynie & Yoder, Fort Wayne, for appellant.

Warren D. Krebs, Parr, Richey, Obremskey & Morton, Indianapolis, for appellees Jay County REMC and United REMC.

Allen H. Lobley, Kevin L. Stock, Ice Miller Donadio & Ryan, Indianapolis, for intervenor Mishawaka Municipal Utilities.

STATON, Judge.

In this appeal, we are required to construe the meaning of "severance damages" as those words appear in West's AIC 8–1–2.3–3(b)(1) (1982). The Public Service Commission of Indiana (PSC) has noted that

"severance damages" are defined in West's AIC 8–1–2.3–6 (Supp.1987), and it applied that meaning to the words in section 3(b)(1).

Affirmed.

This is a consolidated appeal in which Indiana and Michigan Electric Company (I & M) asks us to review decisions of the PSC ordering I & M to pay severance damages of 2½ times the previous year's gross electric sales to two separate Rural Electric Membership Corporations (REMC). These awards were made in proceedings to establish service area boundaries in accordance with IC 8–1–2.3–3(b)(1) which provides as follows:

(1) The electricity supplier serving a plurality of electric meters within the municipality on January 1, 1979, may purchase the electric utility property of any other electricity supplier which is devoted to retail electric service and is located within the existing municipal limits, at its then reproduction cost new depreciated value plus severance damages.

In the instant cases, I & M was the plurality supplier in two different municipalities and it elected to purchase the electric utility property of the smaller suppliers, Jay County REMC and United REMC. In both instances, buyer and seller agreed upon the reproduction cost new depreciated value, but no agreement was reached regarding severance damages. I & M argued that severance damages under section 3 should be limited to the costs of physically severing the transmission lines to the customers being relinquished by the former electricity supplier, plus compensation for any facilities rendered totally useless. These costs were estimated by I & M to be less than $1,000.00 for each REMC.

Under the definition of severance damages contained in section 6 and applied by the PSC, I & M was ordered to pay $147,917.00 to Jay and $390,621.00 to United. Section 6(a) provides, in part, as follows:

... the acquiring electricity supplier shall pay severance damages limited to, if applicable, the distribution and substation facilities dedicated to and located within the annexed area or relocated by

reason of the annexation, or an amount equal to two and one-half (2½) times the previous year's gross electric service sales from the newly assigned service area, whichever is greater.

I & M reasons that the legislature intended section 6 to apply only to changes made after the boundaries of the service areas were fixed under section 3. It further reasoned that compensation for the value of annexed areas need not be paid since case law interpreting a former statute, IC 8–1–13–19 (1971, repealed 1980), held that the franchise right to supply electricity to an area existed only under an indeterminate permit. *Decatur County Rural Electric Membership Corporation v. Public Service Corporation of Indiana* (1973), 261 Ind. 128, 301 N.E.2d 191, 196, *reh. den.* I & M urges us to conclude that the legislature did not intend a drastic change from the prior law. A brief filed by Mishawaka Municipal Utilities, an intervenor, advocates this same argument.

Jay and United contend that the legislature changed the law when it enacted Acts 1980, P.L. 69, and that the PSC's decision regarding severance damages under section 3 was consistent with the new legislation. For the following reasons we agree.

The parties involved in the instant case state that to properly construe the meaning of severance damages in section 3, we must consider the legislative intent. We are urged to ascertain the intent of the legislature by looking at the whole act, the law existing before its passage, the changes made, and the apparent motive for making them. *Froberg v. Northern Indiana Construction, Inc.* (1981), Ind.App., 416 N.E.2d 451, 454, *trans. den.*

■ One of the expressed legislative goals of P.L. 69 was to avoid and eliminate the unnecessary duplication of electric utility facilities throughout our state. In cases like the instant one, where there was more than one supplier to an incorporated city or town, the legislature intended that, unless adjacent suppliers agreed otherwise, each municipality would constitute one service area and have one supplier. IC 8–1–2.3–

3(a)and (b) were included by the legislature to establish procedures whereby exclusive municipal service areas would be created. Under this statute, an assigned electricity supplier had the sole right to supply retail electric service to the customers in a particular service area. Thus, the assignment of a service area constituted property belonging to the assigned supplier. *See Public Service Co. of Colorado v. Public Utilities Commission* (1971), 174 Colo. 231, 483 P.2d 1337, 1339, *reh. den.*

Section 3 provided that, absent an agreement between adjacent electricity suppliers, a municipality having more than one supplier would be assigned to the supplier serving a plurality of the meters in that municipality. It is significant to note that the legislature used January 1, 1979, as the date to determine the plurality supplier and the municipal boundaries. This meant that in March, 1980, when the new law took effect, the municipal service areas were essentially fixed, and property rights attached to them.

The legislature realized the intrinsic monetary value of the service areas they created. In section 4, the legislature provided that where an electricity supplier encroaches onto the service area of another, the encroacher can be enjoined and forced to pay to the assigned supplier all revenues generated by the unauthorized sale of electricity. Moreover, in IC 8–1–2.3–3(h) the legislature provided that once the boundaries were established, they may not be changed except as provided under section 6. That section contains a provision for severance damages to be paid by the acquiring supplier.

■ Given the plain meaning of the language employed in the statutes, derived from P.L. 69, it is possible to ascertain what the legislature intended. *Morrison v. McMahon* (1985), Ind.App., 475 N.E.2d 1174, 1180, *trans. den.* (fundamental rule of statutory construction is to apply the legislative intent). It is clear to us that in IC 8–1–2.3–3(a) and (b) the legislature intended to create municipal service areas with a single supplier, unless adjacent suppliers agreed otherwise, and that the boundaries of these municipal service areas were ascertainable as of January 1, 1979.

The legislature also intended to change the law by providing that assigned electric suppliers who suffer a loss of service area after the effective date of the new statutes can be compensated by the acquiring supplier. Our conclusion is bolstered by IC 8–1–2.3–3(b)(1) and (2) which specify the plurality supplier's options of either purchasing or exchanging property to assure that only one electricity supplier will serve a municipal service area.

In both options contained under IC 8–1–2.3–3(b), the smaller supplier is compensated for its net loss of operational revenue and tangible property. If the plurality supplier elects to arrange an even exchange, there is no requirement that it pay the smaller supplier any money since there is no net loss of tangible property or loss of revenues. On the other hand, if the plurality supplier elects the purchase option under IC 8–1–2.3–3(b)(1), in order to be made whole the smaller supplier must receive a monetary payment for the lost facilities and for its loss of continued revenues from ceded customers. Under I & M's analysis, if the plurality supplier elects the purchase option and is not required to pay severance damages, then the smaller supplier is not made whole and the plurality supplier receives a windfall increase in customers and revenue. This interpretation is not consistent with the exchange option which requires the plurality supplier to make the smaller supplier whole by giving up an equivalent share of its service area outside the municipality. Consequently, we do not embrace I & M's interpretation.

The PSC decided that it would be illogical to have one meaning for the words "severance damages" in section 3 and a different meaning for the same words in section 6. *State ex rel. Pitzer* (1949), 227 Ind. 241, 84 N.E.2d 588, 593, *reh. den.* We agree with the PSC, and conclude that the legislature intended the section 6 definition of severance damages to apply also to section 3. The PSC's decision is affirmed.

GARRARD, P.J., and YOUNG, J., concur.